1997-NMCA-109

947 P.2d 162

**STATE of New Mexico, Petitioner–Appellee,**

**In the Matter of**

**ELI L., a Child, Respondent–Appellant.**

**No. 17678.**

Court of Appeals of New Mexico.

Aug. 25, 1997.

Certiorari Denied Oct. 28, 1997.

206

Tom Udall, Attorney General, Ralph E. Trujillo, Assistant Attorney General, Santa Fe, for Appellee.

C. Barry Crutchfield, Templeman and Crutchfield, Lovington, for Appellant.

## OPINION

FLORES, Judge.

1. Respondent–Appellant Eli L. (the Child) appeals from the Children's Court Judgment and Disposition determining that the Child committed the delinquent act of Unlawful Carrying of a Deadly Weapon on School Premises in violation of NMSA 1978, Section 30–7–2.1 (Repl.Pamp.1994) and adjudging the Child a delinquent offender in

need of care or rehabilitation. The sole issue on appeal is whether the stop and search of the Child was unreasonable and unlawful. We determine that it was and reverse.

*FACTUAL BACKGROUND*

2. On February 9, 1996, at approximately 10:00 p.m., officers of the Hobbs Police Department were called to Highland Junior High School regarding a disturbance in an area across the street from the school. The testimony reveals that two or "several" former students suspended for gang activities were shouting profanities at the school principal from the parking lot directly across the street from the school. Officers Durham and Herrera responded to the call and arrived on the scene together. Upon the officers arrival, the individuals fled from the scene. Soon, however, one of the individuals returned to the area whereupon Officer Durham stopped him and conducted a protective frisk. As a result of this search, the officers found a knife in the possession of the boy. The boy was then arrested.

3. While the officers were talking to the school principal, they heard a whistling sound coming from the school parking lot where the Child was walking. Officer Herrera testified that he observed the Child whistle. The officers, both of whom served on the Hobbs Police Department gang and narcotics unit, also testified that they were familiar with this distinct whistle. The gist of this testimony was that the whistle was a "gang whistle" used by gang members to communicate a warning to other gang members that police officers are present in the area. Officer Herrera further testified that the Child was "sagging," a fad where the person's pants are worn very low and the boxer shorts are pulled up; that a common reason gang members "sag" is to conceal weapons underneath the boxer shorts and to cause police officers to overlook these weapons during a pat-down search; and that the Child was a known associate of a gang called the Southside Locos.

4. Officer Herrera approached and contacted the Child. The school principal testified that the Child became "a little bit disrespectful" and initially resisted the officer. The testimony further revealed that there were several people, both adults and students in the near vicinity, many of whom were leaving. The record, however, does not indicate exactly where these persons were located in proximity to the Child and the officers, or whether any of them were gang members. Officer Herrera testified that he did not observe or have any knowledge that the Child had committed any criminal offense. Likewise, Officer Durham testified that he did not witness the Child commit or participate in any crime. Officer Herrera indicated the Child was stopped and searched because of his gang association, the Child's appearance (sagging), and the whistling. As a result of the pat-down search, a knife was found in the waistband of Child's undershorts or pants.

5. At the adjudicatory hearing, and over the Child's objection, the knife was admitted into evidence and the Child was found to have committed the delinquent act of Unlawful Carrying of a Deadly Weapon on School Premises, and adjudged a delinquent offender. This appeal followed.

*STANDARD OF REVIEW*

6. The appropriate standard of appellate review of a ruling on a suppression motion is " 'whether the law was correctly applied to the facts, viewing them in a manner most favorable to the prevailing party[.]' " *State v. Werner,* 117 N.M. 315, 317, 871 P.2d 971, 973 (1994) (quoting *State v. Boeglin,* 100 N.M. 127, 132, 666 P.2d 1274, 1279 (Ct.App.), *rev'd on other grounds,* 100 N.M. 470, 672 P.2d 643 (1983)). The appellate court draws all reasonable inferences in support of the trial court's factual determination and disregards all inferences or evidence to the contrary. *Id.* "The ultimate determination of reasonable suspicion … however, is reviewed *de novo.*" *State v. Tywayne H.,* 123 N.M. 42, 44, 933 P.2d 251, 253 (Ct.App.), *cert. denied,* 123 N.M. 83, 934 P.2d 277 (1997) (emphasis added); *State v. Graves,* 119 N.M. 89, 91, 888 P.2d 971, 973 (Ct.App.1994).

*DISCUSSION*

7. The Child argues that the initial stop and subsequent search were unreasonable and unlawful and that the children's court

therefore erred in admitting the knife into evidence. We agree.

8. We recognize that under appropriate circumstances, "a police officer may detain a person in order to investigate possible criminal activity, even if there is no probable cause to make an arrest." *State v. Cobbs*, 103 N.M. 623, 626, 711 P.2d 900, 903 (Ct.App.1985). The circumstances must arise from the officer's "reasonable suspicion" that the law is being or has been broken. *Id.; see also State v. Watley*, 109 N.M. 619, 624, 788 P.2d 375, 380 (Ct.App. 1989) ("[A]n officer may stop and detain a citizen if the officer has a reasonable and articulable suspicion that the person stopped is or has been involved in criminal activity."); *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The officer must base his "reasonable suspicion" on specific articulable facts, and rational inferences taken from those facts. *Cobbs*, 103 N.M. at 626, 711 P.2d at 903. In sum, "[a]n investigatory stop requires an assessment that yields a particularized suspicion, one that is based on the totality of the circumstances and that raises a suspicion that the particular individual being stopped is engaged in wrongdoing." *Watley*, 109 N.M. at 624, 788 P.2d at 380.

Whether or not a search and seizure, including a stop and frisk of an individual by law enforcement officers, violates the Fourth Amendment is judged under the facts of each case by balancing the degree of intrusion into an individual's privacy against the interest of the government in promoting crime prevention and detection.

*State v. Jones*, 114 N.M. 147, 150, 835 P.2d 863, 866 (Ct.App.1992).

9. Here, the Child argues that he was stopped and searched because he had whistled in a manner felt by the officers to be a gang whistle and was dressed in a manner associated with gang members. Thus, the Child contends that Officer Herrera lacked sufficient information at the time he approached the Child and conducted the pat-down frisk that the Child was committing or was about to commit a crime or was in possession of a weapon.

10. The State's position is that the officers had reasonable suspicion from the totality of the circumstances to believe that the Child was involved in criminal activity. The State contends that the police officers were dispatched to the school based on a report of gang members engaged in disorderly conduct or fighting; that at the time the Child was searched, Officer Durham had already apprehended one juvenile and found that the juvenile was carrying a concealed weapon; that the Child was heard to communicate a warning to other gang members; that the Child was wearing his clothes in a manner which is conducive to concealing weapons; that it was late at night; and that the Child's behavior was hostile and confrontational toward the officers.

11. We accept as accurate that the officers stopped the Child for all of the reasons advanced by the State. *See Jones*, 114 N.M. at 151, 835 P.2d at 867. However, we are unable to find anything within the officers' knowledge at the time the Child was stopped to support reasonable individualized suspicion that the Child had committed or was about to commit a crime. *See id.* Admittedly, the officers knew that the Child was a gang member and that he had whistled, however, they had only generalized suspicion that other gang members, not the Child specifically, had committed a crime or had engaged in any wrongdoing. *See id.* In fact, there is no evidence indicating that the Child was even involved in the initial reported disturbance. There is no evidence that the gang the Child assertedly belonged to was the gang which caused or was involved in the original incident. Moreover, it is unclear from the record whether any gang members were even present in the immediate vicinity, at the time the Child was observed whistling, since the testimony indicates that when the officers arrived on the scene several of the "suspects" scattered and ran from the scene. Even assuming that the whistle was meant as a signal to others that officers were in the area, this does not justify by itself a stop and pat-down frisk of the Child.

12. Neither are we persuaded that it was reasonable or appropriate for the officers to rely on the fact that they found a knife on

another boy as a basis for the stop and search of the Child, especially since the circumstances of the pat-down search of the first boy are unknown. In sum, we agree with the *Jones* Court that "we will not dispense with the requirement of individualized, particularized suspicion." 114 N.M. at 150, 835 P.2d at 866.

13. We also recognize that during the process of an investigatory stop, whenever an officer reasonably believes that the individual whose suspicious behavior he is investigating may be armed and presently dangerous, the officer may check for weapons to ensure personal safety. *Terry*, 392 U.S. at 24, 88 S.Ct. at 1881. Similarly, this Court in the recent case of *Tywayne H.*, 123 N.M. at 48, 933 P.2d at 257, stated that: "An officer who stops a suspect on reasonable suspicion of [an inherently dangerous crime] may conduct a protective search. In order, however, to conduct a frisk of a person suspected of engaging in a nonviolent offense, . . . additional articulable facts of potential danger must be present, as well as the suspicion of criminal activity." (quoting *Cobbs*, 103 N.M. at 630, 711 P.2d at 907). Further, in *Cobbs*, this Court stated that burglary, robbery, rape, assault with a weapon, and dealing in large narcotics transactions were the types of crimes included in the category of inherently dangerous crimes. 103 N.M. at 630, 711 P.2d at 907. In this case, the evidence shows that the police officers were at the scene to investigate a report of gang members, not necessarily the Child or Child's gang, yelling profanities at the school principal. We do not believe that this conduct, even if performed by the Child—much less by "other gang members,"—or the fact that the Child was "sagging" and whistling, is an inherently dangerous crime or the type of conduct that would necessarily lead a reasonable police officer to believe that the Child was armed or dangerous. The facts, in essence, merely establish that the officers knew that the Child was a gang member and that he may have been warning other gang members that officers were present. This, however, even under the totality of the circumstances, is not criminal behavior nor does it give rise to a reasonable inference that the

Child was involved in a criminal activity. Similarly, these circumstances do not reasonably give rise to a concern that the Child was armed or dangerous. Thus, even assuming that there may have been reasonable suspicion, from the totality of the circumstances, for the initial stop of the Child, we determine that there was no reasonable suspicion for the subsequent search.

*CONCLUSION*

14. Ordinarily, when we rule that certain evidence should have been suppressed, we remand to the lower court to suppress the particular evidence and proceed accordingly. In this instance, however, the children's court adopted the following special master's unchallenged finding of fact:

(v) The State and the [C]hild thereupon agreed that admission into evidence of the knife, or its exclusion from evidence in the cause, is determinative of the issue as to whether the [C]hild did or did not commit the delinquent act alleged in the petition filed May 16, 1996[.]

15. Accordingly, for the reasons stated herein, we reverse.

16. IT IS SO ORDERED.

BUSTAMANTE, J., concurs.

DONNELLY, J., dissenting.

DONNELLY, Judge, dissenting.

17. I respectfully dissent. This case represents another in a series of attempts by school authorities to deal with gang problems in the public schools. Eli L. (the Child) was adjudicated by the children's court to have unlawfully possessed a deadly weapon on school premises, contrary to NMSA 1978, Section 30–7–2.1 (1994).

18. The record indicates that two Hobbs police officers responded to a call reporting a disturbance by gang members across the street from a building where a school dance at Highland Junior High School was being held. Officer Mark Herrera testified that when he and another officer arrived at the school the youths causing the disturbance ran away. One of the youths involved in the

disturbance was apprehended by the officers. A pat-down search of that individual revealed that he was carrying a deadly weapon.

19. A brief time later, the officers observed the Child, involved here, in the school parking lot. Officer Herrera testified that the Child was signaling to gang members in the area and that he approached the Child in order to question him. The school principal who observed the events stated that when Officer Herrera walked up to the Child, the youth became "a little bit disrespectful" and said something "derogatory" to the officer. The principal also testified that

> [t]hey asked [the Child] to go with them. He initially resisted. One of the officers ... took him by the arm and [the Child] jerked his arm around and resisted them and then both officers took him across the street to their car where they did a pat-down search of him.

Officer Herrera testified that he conducted a pat-down search of the Child for the safety of the police officers and for the safety of the students in the area. The search of the Child revealed a straight-blade knife hidden in the waistband of the Child's clothing. The Child filed a motion to suppress the weapon seized from the search. Following a hearing, the children's court denied the motion to suppress.

20. I would affirm the ruling of the children's court. An appellate court, in reviewing the lower court's ruling on a motion to suppress, examines the record to determine whether the law was correctly applied to the facts. In conducting this review, we view the evidence presented at the motion to suppress in the manner most favorable to the ruling below and engage in all reasonable inferences in support thereof. *See State v. Wright,* 119 N.M. 559, 562, 893 P.2d 455, 458 (Ct.App.1995).

21. This Court has held that, in order to conduct an investigatory stop and a pat-down search of an individual, the officer must possess a particularized suspicion, based on the totality of the circumstances justifying a reasonable suspicion, that the individual stopped is or has been engaged in wrongdoing. *See State v. Watley,* 109 N.M. 619, 624, 788 P.2d 375, 380 (Ct.App.1989). This Court has also

held that while an individual's membership in a gang is a factor which may properly be considered by law enforcement officers in determining whether a stop and frisk is proper, that factor, standing alone, is insufficient to justify such action. *See State v. Jones,* 114 N.M. 147, 150, 835 P.2d 863, 866 (Ct.App. 1992).

22. Although I agree with the majority that certain of the evidence, if considered in isolation, would not justify a warrantless search of the Child, the evidence, when viewed in its totality, provided a factual basis for the officers to believe that the Child was signaling gang members involved in the school disturbance, and based on the Child's ensuing conduct the children's court could reasonably determine that the pat-down search of the Child was justified for safety reasons. *See State v. Vargas,* 120 N.M. 416, 418, 902 P.2d 571, 573 (Ct.App.) (whether search complies with constitutional requirements depends on objective assessment of police officer's actions based on all the facts confronting the officer), *cert. denied,* 120 N.M. 213, 900 P.2d 962 (1995); *State v. Porras–Fuerte,* 119 N.M. 180, 184, 889 P.2d 215, 219 (Ct.App.1994) (whether search was justified is viewed from the totality of the circumstances); *see also State v. Cobbs,* 103 N.M. 623, 630, 711 P.2d 900, 907 (Ct.App.1985) (police officer need not await " 'glint of steel before he can act to protect his safety' ") (citation omitted).

23. Considering the fact that the stop and pat-down search occurred shortly after police arrived in response to a call reporting a public disturbance involving known gang members, at least one of whom was found to be armed with a weapon; the fact that the officers had a reasonable basis to suspect that the Child was assisting the gang members who had caused the disturbance to avoid being apprehended; that the Child was on school premises and other students were in the area; that when the officers attempted to talk to him, the Child became disrespectful and "resisted" them; and together with the fact that the officer who conducted the search testified that he conducted the search for his own safety and that of others in the area, I do not believe that reversal is appro-

priate here. As observed by this Court in *State v. Tywayne H.*, 123 N.M. 42, 46, 933 P.2d 251, 255 (Ct.App.), *cert. denied,* 123 N.M. 83, 934 P.2d 277 (1997), the state has a legitimate and important concern in ridding the school grounds of weapons. Additionally, as recognized by the majority, this Court has previously held that law enforcement officers may in appropriate circumstances stop an individual in order to investigate possible criminal activity, even if there is no probable cause to make an arrest. *See Cobbs,* 103 N.M. at 626, 711 P.2d at 903. It is undisputed that the stop and pat-down occurred on school property within minutes after there had been a disturbance at the school necessitating a call for police assistance. Under these circumstances, I would defer to the children's court's determination of the underlying facts and affirm its ruling concerning the admissibility of the evidence.