This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

    Plaintiff-Appellee,

v.                                                                  **NO. 29,001**

**AARON R.,**

    Child-Appellant.

**APPEAL FROM THE DISTRICT COURT OF LEA COUNTY**
**Gary L. Clingman, District Judge**

Gary K King, Attorney General
Andrew S. Montgomery, Assistant Attorney General
Santa Fe, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
J. K. Theodosia Johnson, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**VANZI, Judge.**

Aaron R. (Child) challenges the sufficiency of the evidence to support his adjudication of delinquency based on resisting, evading, or obstructing an officer, contrary to NMSA 1978, Section 30-22-1(B) (1981). We affirm.

**BACKGROUND**

Child was charged with resisting, evading, or obstructing an officer. At an adjudicatory hearing before a special master, Officer Stanley Benson was the only witness. He testified as follows.

Officer Benson was on duty as a commissioned patrol officer with the Hobbs Police Department on December 11, 2007, which was a weekday. At just after 1:00 p.m., he was dispatched to a residence on the 1400 block of Cimarron Road in response to a report of a possible breaking and entering. The officer was told that several juveniles were involved and were last seen running in the alley.

Officer Benson, who was in uniform and was driving a marked patrol car, checked the front of the residence. When he did not see anyone in front, he drove to the alley south of the house, where he observed at least six juveniles. As he drove west, the juveniles turned, observed his patrol car, and immediately began to run west through the alley. At that point, Officer Benson yelled, "Police officer, stop!" from his vehicle. He was about ten to fifteen feet away from the juveniles.

Instead of complying with the officer's command, Child and three other juveniles continued to run west down the alley and then jumped over a brick fence that leads to Rose Lane, which is south of Cimarron Road. Officer Benson turned south out of the alley and stopped on Rose Lane. Three of the juveniles, including Child, jumped over a fence in the front yard of a residence on Rose Lane. Officer Benson exited his patrol car and again, from a distance of ten to fifteen feet, yelled, "Police officer, stop!"

The three juveniles turned around and ran north from Rose Lane going back over the fence toward the alley where the officer first saw the group. Officer Benson reversed his patrol car and returned to the alley where he saw Child jump over a fence and stop. At this point, the officer had yelled stop and identified himself as a police officer two times. While the two other juveniles continued to run north back to Cimarron Road, Officer Benson yelled stop a third time, and this time Child complied.

Officer Benson handcuffed Child and placed him in his patrol car. Child later told the officer that he did not hear him yell stop and that he ran because they were skipping school.

Officer Benson testified that when he yelled at the juveniles, he wanted them to stop so that he could determine if they were involved in the possible breaking and entering. He believed that the juveniles saw him and were running from him. There were no noises in the area or disturbances that might have caused the juveniles not to

3

hear him. The special master noted that the incident took place on a school day, at a time when school-age children should have been in school.

After the hearing, the special master found that Officer Benson responded to a call about a possible breaking and entering involving several juveniles last seen running in an alley, that the officer found several juveniles in the alley, and while in uniform and in a marked police car yelled for them to stop, and that Child intentionally fled and ignored the commands twice before stopping and telling the officer that he did not hear him and that he was scared because he was skipping school. The special master concluded that Child committed the delinquent act of resisting, evading, or obstructing an officer.

Child filed exceptions, arguing that there was no evidence that Officer Benson had particularized suspicion that Child was involved in criminal activity or that Child heard the officer tell him to stop. After reviewing the transcript, the children's court adopted the special master's findings and entered a judgment and disposition adjudicating Child as a delinquent child. Child was placed on probation for up to two years.

**DISCUSSION**

Child contends that the State failed to present sufficient evidence that he committed the delinquent act of resisting or evading an officer. Child argues that the

State failed to prove that Officer Benson had reasonable suspicion to apprehend him or that Child knew that Officer Benson was attempting to apprehend him.

"In determining the sufficiency of evidence, this Court must ascertain whether there is substantial evidence of a direct or circumstantial nature to support a finding of guilt beyond a reasonable doubt with respect to every element essential to each conviction." *In re Ruben O.*, 120 N.M. 160, 165, 899 P.2d 603, 608 (Ct. App. 1995). "In applying this test, we scrutinize the evidence contained in the record in a light most favorable to sustain the decision entered below." *Id.* We do not weigh the evidence or substitute our judgment for that of the fact finder as long as there is sufficient evidence to support the judgment. *State v. Gutierrez*, 2007-NMSC-033, ¶ 26, 142 N.M. 1, 162 P.3d 156.

Resisting, evading or obstructing an officer consists of "intentionally fleeing, attempting to evade or evading an officer of this state when the person committing the act of fleeing, attempting to evade or evasion has knowledge that the officer is attempting to apprehend or arrest him." Section 30-22-1(B). To support a finding that Child committed the delinquent act of resisting, evading, or obstructing an officer, the State had to prove beyond a reasonable doubt (1) that Officer Benson was a peace officer in the lawful discharge of duties, and (2) that Child, with the knowledge that Officer Benson was attempting to apprehend or arrest him, fled, attempted to evade, or evaded the officer. *See* UJI 14-2215 NMRA.

**Reasonable Suspicion**

We first address whether Officer Benson had reasonable suspicion to detain Child. Child contends that because Officer Benson lacked reasonable suspicion to detain Child, his seizure of Child was unlawful, and therefore, the State did not prove the first element, that Officer Benson was in lawful discharge of his duties. We disagree.

In *Gutierrez*, our Supreme Court held that the purpose of Section 30-22-1(B) is "to deter people from fleeing from officers," and thus the statute applies to investigatory detentions. *Gutierrez*, 2007-NMSC-033, ¶¶ 30-31 (holding that Section 30-22-1(B) includes situations "in which an officer is attempting to briefly detain a person for questioning based on reasonable suspicion"). Section 30-22-1(B) encompasses situations in which an officer attempts to apprehend a person based on "a reasonable suspicion that the person was or is about to be involved in criminal activity." *Gutierrez*, 2007-NMSC-033, ¶ 31.

As the *Gutierrez* Court emphasized, the issue of whether an officer had reasonable suspicion is crucial to the determination of whether there is sufficient evidence to support a conviction for fleeing or evading because without reasonable suspicion, an officer would lack the authority to detain an individual. *Id.* ¶ 32. We therefore must determine whether Officer Benson was authorized to stop Child.

6

It is well-established that a police officer may stop a person for investigative purposes when the officer has a reasonable and objective basis for suspecting that the particular person is engaged in criminal activity. *See id.* ¶ 29 (stating that "an officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions" (internal quotation marks and citation omitted)); *State v. Flores*, 1996-NMCA-059, ¶ 7, 122 N.M. 84, 920 P.2d 1038 (noting that officers may make an investigatory stop and detain a citizen if there is reasonable suspicion of criminal activity). "Questions of reasonable suspicion are reviewed de novo by looking at the totality of the circumstances to determine whether the detention was justified." *State v. Robbs*, 2006-NMCA-061, ¶ 9, 139 N.M. 569, 136 P.3d 570. We determine the existence of reasonable suspicion using an objective standard and examine whether "the facts available to the officer warrant the officer, as a person of reasonable caution, to believe the action taken was appropriate[.]" *State v. Madsen*, 2000-NMCA-050, ¶ 9, 129 N.M. 251, 5 P.3d 573 (internal quotation marks and citation omitted). "An investigatory stop is based on reasonable suspicion if the officer is aware of specific articulable facts, together with rational inferences from those facts, that, when judged objectively, would lead a reasonable person to believe criminal activity occurred or was occurring." *State v. Taylor*, 1999-NMCA-022, ¶ 7, 126 N.M. 569, 973 P.2d 246 (filed 1998) (internal quotation marks and citation omitted). While reasonable

7

suspicion may not be based on "[u]nsupported intuition and inarticulate hunches," it may "arise from wholly lawful conduct." *State v. Harbison*, 2007-NMSC-016, ¶ 15, 141 N.M. 392, 156 P.3d 30 (alterations in original) (internal quotation marks and citations omitted).

Here, Officer Benson was investigating a suspected breaking and entering on a weekday afternoon at a residence on Cimarron Road. He was told that several juveniles were involved and that the juveniles were last seen running down the alley. After Officer Benson checked the front of the house that was the location of a possible crime scene, he drove to the adjacent alley and saw six or more juveniles in the alley behind the house. When the juveniles saw his patrol car, they began running away from the car down the alley. Thus, during an investigation of a possible crime, Officer Benson located a group of juveniles near the alleged crime scene that matched the description and location of the suspects provided in the dispatch. In addition, the juveniles were in the alley at a time of day when it would be reasonable for them to be in school and began running as soon as they saw the patrol car. Under these circumstances, and viewed in the light most favorable to the decision, the facts support a determination that Officer Benson had the authority to briefly detain Child to question him about the alleged breaking and entering. *See State v. Watley*, 109 N.M. 619, 624, 788 P.2d 375, 380 (Ct. App. 1989) (holding that it was not improper for the officer to stop a defendant in order to investigate when the defendant was stopped in

8

the vicinity of a recently reported crime after a report that someone matching the defendant's description was seen in the area).

Child contends that Officer Benson did not have individualized, reasonable suspicion as required by *State v. Jason L.*, 2000-NMSC-018, ¶ 21, 129 N.M. 119, 2 P.3d 856. Thus, Child contends that this case is similar to *State v. Eli L.*, 1997-NMCA-109, 124 N.M. 205, 947 P.2d 162. We disagree.

Both *Jason L.* and *Eli L.* can be distinguished from this case. In *Jason L.*, two officers in a police car who were not investigating any criminal activity at the time began following two juveniles walking down the street when they allegedly witnessed suspicious activity on the part of Filemon M., which included looking over his shoulder at the officers and reaching for his waistband underneath a heavy coat. 2000-NMSC-018, ¶ 3. The officers approached the juveniles and asked them to come to the car. *Id.* ¶ 13. Filemon M. appeared to be nervous and positioned himself between the officer and the other juvenile, the defendant. *Id.* The officers frisked Filemon M. and found a gun. *Id.* They then searched the defendant. *Id.* ¶ 7. Our Supreme Court held that the State could not rely on the suspicious conduct of Filemon M. to support a finding that reasonable suspicion existed to stop the defendant. *Id.* ¶ 21. Thus, the State had not established individualized, particularized suspicion with respect to the defendant. *Id.* ¶ 22.

Similarly, no reasonable, individual suspicion was found in *Eli L.* In that case, officers were called to investigate a disturbance across the street from a junior high school involving former students who had been suspended for gang activity. *Eli L.*, 1997-NMCA-109, ¶ 2. When the officers arrived, the individuals fled, but one boy later returned to the scene where he was stopped and frisked. *Id.* The officers found a knife on the boy and arrested him. *Id.* Later, the officers saw the defendant walking across the school parking lot, observed him whistle, which was a known gang communication, and wearing sagging pants, which the officers also interpreted as a sign of gang membership. *Id.* ¶ 3. An officer stopped and searched the defendant due to his "gang whistle," his appearance, and because he was a known gang member. *Id.* ¶ 4. This Court held that there was no reasonable individualized suspicion that the defendant was involved in criminal activity. *Id.* ¶ 11. Even though the officers knew that the defendant was a gang member, they had no knowledge that the defendant or his gang were involved in the initial reported disturbance or any other criminal activity. *Id.*

In contrast to these two cases, Officer Benson had particularized suspicion of Child because Child was a member of a group that was suspected of being involved in criminal activity. Officer Benson was investigating a possible breaking and entering at a particular residence and was told that the suspects were a group of juveniles who were last seen running down the alley. When Officer Benson arrived

10

at the alley behind the house, he found a group of juveniles that matched the description and location of the suspects in the dispatch. Thus, Officer Benson had reason to suspect that each member of the group was involved or might be involved in criminal activity. As the State argues, the requirement of individualized suspicion does not preclude police officers from questioning multiple suspects if there is reason to believe that all of them are involved.

Moreover, Child's flight upon seeing Officer Benson's patrol car provided further reason for the officer to have a particularized suspicion justifying Child's detention. *See Harbison*, 2007-NMSC-016, ¶ 18 (finding reasonable suspicion justifying an investigatory stop when the defendant was one of a group of people standing with an individual who had just completed a drug sale and hurried away when several police officers arrived). We agree with the State that Child's own act of evading Officer Benson distinguishes this case from *Jason L.* and *Eli L.*, neither of which involved flight upon the arrival of an officer. *See State v. Maez*, 2009-NMCA-108, ¶ 20, 147 N.M. 91, 217 P.3d 104 (recognizing that unprovoked "flight can be a circumstance that is properly evaluated to establish reasonable suspicion").

Although Child contends that we cannot consider Child's flight because reasonable suspicion must exist at the inception of the seizure, Child's flight upon seeing Officer Benson's patrol car "becomes a part of the totality of the circumstances to be considered in determining reasonable suspicion" because it occurred before the

11

inception of the seizure. *See Harbison*, 2007-NMSC-016, ¶ 16. Child began running as soon as he saw Officer Benson's patrol car, before Officer Benson yelled at him to stop. Under the federal constitution, Child's unprovoked flight undoubtedly could be considered as part of the circumstances that gave Officer Benson a reasonable, particularized suspicion that Child was involved in the suspected residential crime. *See id.* ¶ 18. Thus, Officer Benson had reasonable suspicion to pursue Child and subject him to a brief investigatory detention based on Child's unprovoked, headlong flight, the dispatch of the possible breaking and entering involving a group of juveniles who were in the alley, the officer's discovery of a group of individuals matching the description and location in the dispatch, and the juveniles' presence in the alley on a school day.

We are not persuaded that a different result is compelled under the New Mexico Constitution. Relying on the recent case *State v. Garcia*, 2009-NMSC-046, 147 N.M. 134, 217 P.3d 1032, Child argues for the first time in his reply brief that he was seized the minute Officer Benson turned into the alley, and thus his flight could not be considered as part of the totality of the circumstances. The *Garcia* Court held that a person is seized under Article II, Section 10, not when a person submits to a show of authority, but when a reasonable person would not feel free to leave. *Garcia*, 2009-NMSC-046, ¶¶ 26-35. In *Garcia*, however, the Court held that the defendant was seized under the New Mexico Constitution when an officer stopped his patrol car in

close proximity to the defendant, shone his flashlight on him, and ordered him to stop. *See id.* ¶ 41. Here, the officer did not begin to chase Child or order him to stop until after Child began to run. We are not persuaded that the simple sight of a patrol car constituted a seizure. Thus, under the New Mexico Constitution as well, Child's flight can be considered as part of the reasonable suspicion evaluation because it occurred before the seizure.

Because we agree that the State presented sufficient evidence that Officer Benson had reasonable suspicion, we conclude that the officer had the legal authority to apprehend Child and briefly question him. *See Gutierrez*, 2007-NMSC-033, ¶ 33. We therefore reject Child's argument that the first element of fleeing or evading was not met because Officer Benson was not acting lawfully. Thus, having shown that Officer Benson was in uniform and driving a patrol car, the State met the burden of proving that Officer Benson was in the lawful discharge of his duties. *See id.* ¶ 27.

**Knowledge**

Having determined that there is sufficient evidence to support a determination that Officer Benson had reasonable suspicion to detain Child, we next address whether the State proved that Child, with the knowledge that the officer was attempting to apprehend him, fled, attempted to evade, or evaded the officer. The State was required to prove that a reasonable person would have understood that Officer Benson

was attempting to detain him and that the Child subjectively knew that the officer was attempting to detain him. *See id. ¶¶* 34-36.

The State was required to prove that Officer Benson made a "show of authority" sufficient for a seizure. *See id.* ¶ 34 (internal quotation marks and citation omitted). Whether there was a show of authority sufficient for a seizure "is an objective test and depends on whether the officer's words or actions would have conveyed to a reasonable person that he was being ordered to restrict his movement." *Id.* (internal quotation marks and citation omitted). Officer Benson's words consisted of repeatedly yelling at Child to stop and identifying himself as a police officer from a distance of ten to fifteen feet away. Officer Benson's actions consisted of following Child in his patrol car, while in uniform and yelling at him to stop as Child ran down the alley crossing fences and yards to Rose Lane, where Officer Benson exited his patrol car and yelled at Child again. When Child started running in the opposite direction, the officer chased him back over the fences and yards to the alley. Officer Benson's words and actions would convey to a reasonable person that he or she was being ordered to restrict his or her movement so that the officer could detain the person. *See id.*

We next turn to whether Child subjectively knew the officer was attempting to apprehend him. The special master "could have reasonably inferred [Child's] knowledge from many of the same facts which also support our conclusion that a

reasonable person would have understood he was not free to walk away." *Id.* ¶ 36. While Child claims he did not hear Officer Benson yelling at him to stop, the fact finder was not required to believe Child. *See State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829 (filed 1998). To the contrary, there is substantial evidence that Child heard the officer. The officer yelled at Child in the alley from his patrol car at a distance of ten to fifteen feet. Child jumped over a couple of fences to reach Rose Lane. Meanwhile, Officer Benson followed Child to Rose Lane, where he exited his patrol car and again yelled, "Police, stop!" from a distance of ten to fifteen feet. Child then switched directions and ran back across yards and fences to the alley, where the officer yelled at him a third time, and Child finally stopped. In addition, Child acknowledged that he ran from Officer Benson because he was skipping school.

Based on Officer Benson's close proximity to Child, the lack of any noise or other distractions in the residential neighborhood in the early afternoon, Child's apparent attempts to run in the opposite direction from the pursuing officer, and Child's acknowledgment that he saw the patrol car and ran because he was skipping school, the special master was entitled to infer that Child knew that Officer Benson was attempting to apprehend him. *See Gutierrez*, 2007-NMSC-033, ¶ 36 (holding that evidence of a defendant's flight in addition to other circumstantial evidence was sufficient to give rise to fair inferences that the defendant understood the officer was

attempting to arrest or apprehend him). Therefore, viewed in the light most favorable to the verdict, substantial evidence supports the determination that Child subjectively knew that Officer Benson was attempting to detain him for questioning.

Accordingly, we hold that substantial evidence exists that Child was fleeing or evading an officer, contrary to Section 30-22-1(B).

**CONCLUSION**

We affirm.

**IT IS SO ORDERED.**

_____
**LINDA M. VANZI, Judge**

**WE CONCUR:**

_____
**CYNTHIA A. FRY, Chief Judge**

_____
**JONATHAN B. SUTIN, Judge**