**Certiorari Denied, No. 31,857, August 18, 2009**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2009-NMCA-108**

**Filing Date:  July 1, 2009**

**Docket No. 27,528**

**STATE OF NEW MEXICO,**

        **Plaintiff-Appellee,**

**v.**

**PAUL MAEZ,**

        **Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**James Blackmer, District Judge**

Gary K. King, Attorney General
Katherine Zinn, Assistant Attorney General
Santa Fe, NM

for Appellee

Hugh W. Dangler, Chief Public Defender
Vicki W. Zelle, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**OPINION**

**KENNEDY, Judge.**

**{1}**     Defendant Paul Maez appeals the district court's denial of his motion to suppress evidence.  He contends that the arresting officer illegally seized him without reasonable suspicion or probable cause and asserts that Article II, Section 10 of the New Mexico State Constitution supports his claim.  We disagree and affirm the district court's denial of

1

Defendant's motion to suppress, holding that the arresting officer legally asserted his authority to effectuate an investigatory detention.

**BACKGROUND**

{2}     Officer Ray Soto was off-duty, driving home during rush hour, and sitting in standstill traffic near the intersection of a major arterial, Paseo del Norte and Jefferson, when he witnessed a minivan straddling the lane-divider line in westbound traffic. The minivan was "splitting" traffic and hitting vehicles out of its way. Officer Soto testified that the minivan hit somewhere between three and five vehicles and then came to a complete stop. He indicated that the vehicles were "lurching sideways" as the minivan "split traffic." In response to these events, Officer Soto testified he maneuvered his vehicle to the right, engaged his emergency lights, and "started to get on the radio" to notify other units that there had been an accident and that additional police were needed. He then exited his vehicle.

{3}     Officer Soto was dressed in civilian attire and driving an unmarked police car equipped with a siren and lights. As he exited his cruiser, he could see that the right front tire of the minivan "was completely torn away from the vehicle and was almost detached from the vehicle." At about the same time, the van's driver exited the minivan and ran south across the far left lane of westbound traffic, jumped a concrete barrier, and negotiated his way through three lanes of eastbound traffic that were moving at "different intervals at higher speeds." The driver then jumped another concrete barrier and continued across a large field. Within a few seconds of the driver's flight, Defendant, who was a passenger in the minivan, also jumped out, but he ran in the opposite direction from the driver, towards the shoulder on the north side of the street, and over a concrete barrier.

{4}     Officer Soto decided to chase Defendant instead of the driver because the traffic situation posed fewer obstacles in the direction Defendant fled. Officer Soto testified that Defendant's flight, occurring almost simultaneously with the stalling of the minivan and through traffic at great risk to Defendant, gave him reasonable suspicion to conduct an investigation. He testified that, based on ten years of experience as a police officer, the occupants of vehicles involved in traffic accidents normally only run when "they are DWI'ing, they have a warrant, . . . [or] to hide crimes [that] have been committed." When Officer Soto witnessed the minivan splitting traffic, striking other cars, and causing other vehicles to lurch sideways, he did not know if anyone had been injured. He likewise did not know if the minivan had been stolen or if the occupants were "trying to run from something, [or] get away for some reason."

{5}     Officer Soto also testified that once he began to catch up with Defendant, he loudly yelled, "Police, stop." He yelled, "Police, stop" more than once, but Defendant refused to obey the commands. Officer Soto stated that he was never farther than forty-five or fifty feet from Defendant during the pursuit. After running about fifty yards with Officer Soto pursuing him and yelling for him to stop, Defendant stopped. Defendant was approximately thirty feet from Officer Soto at that point. Officer Soto then ordered, "Police. Get on the ground." Defendant turned around, and Officer Soto told him to "Get on the ground. Get on the ground." Because he was brandishing his gun and badge, yelling "Police," Officer Soto testified that he believed it was evident to Defendant that he was a police officer. Defendant

2

then started to walk towards Officer Soto, and Officer Soto said, "Don't do it. Get on the ground." Nevertheless, Defendant continued to approach, keeping his hands where Officer Soto could see them, saying nothing. Officer Soto testified that he did not see a weapon "protruding" from Defendant but that Defendant was wearing "baggy clothing" and it was unclear whether Defendant had weapons on him. When Defendant was within two or three feet, Officer Soto kicked him in the mid-section, and Defendant "went down." Officer Soto then pushed Defendant the rest of the way down and handcuffed him.

**{6}** Defendant was placed under arrest for failing to obey a police officer and leaving the scene of an accident. He was then searched for weapons and escorted back to Officer Soto's police cruiser. As he escorted Defendant, Officer Soto did not ask any questions, but he testified that he was certain Defendant was read his *Miranda* rights. On the way, the pair reached a concrete barrier, and because Defendant was handcuffed, Officer Soto helped him cross over and then crossed over himself. As Officer Soto was climbing over the barrier, he saw Defendant reach into his right front pocket, take out a piece of cardboard, and toss it to the ground. The piece of cardboard was a lottery scratch-off containing a white substance which later tested positive for methamphetamine. Defendant was ultimately charged with possession of methamphetamine, tampering with evidence, and resisting or evading an officer

**{7}** Defendant filed a motion to suppress evidence obtained as a result of an unlawful search and seizure. At the hearing on the motion, Officer Soto was the only witness who testified. Following the hearing, the suppression motion was denied. Defendant entered a plea of guilty to the possession charge, but reserved his right to appeal "the issue of suppression of evidence pursuant to illegal arrest [and] search." Judgment was entered, and Defendant now appeals his conviction.

**DISCUSSION**

**{8}** "This Court will not consider and counsel should not refer to matters not of record in their briefs." *In re Aaron L.*, 2000-NMCA-024, ¶ 27, 128 N.M. 641, 996 P.2d 431. Defendant did not testify at the proceedings below. Statements in Defendant's brief regarding his emotional and mental state, the precarious condition of the minivan after it came to a stop, his reasons for immediately leaving the area, the possibility that he ran only to report the accident, and the noise level from traffic as he ran do not reference the record. Since this Court finds nothing in the record to support these assertions, we do not consider them.

**{9}** On appeal of a suppression ruling, we view the facts in the light most favorable to the decision below and determine whether the law was correctly applied to the facts. *State v. Harbison*, 2007-NMSC-016, ¶ 8, 141 N.M. 392, 156 P.3d 30. We review factual determinations for substantial evidence, and we review the application of law to the facts de novo. *Id*. We conduct a de novo review of decisions regarding reasonable suspicion. *Id*.

**{10}** Defendant raises two main issues: First, whether under the New Mexico Constitution, he was illegally seized when Officer Soto "asserted his authority to effectuate an investigative detention" without reasonable suspicion; and second, whether he was

3

illegally subjected to a warrantless seizure not supported by reasonable suspicion or probable cause, in violation of the Fourth Amendment, when he was riding as a passenger in a minivan and left the area after the minivan was involved in a crash. Defendant divides his first issue into four sub-issues: (1) whether his flight, which was not an "unprovoked flight upon noticing police," could be used to support a finding of reasonable suspicion; (2) whether his flight from the scene could be included in the totality of the circumstances to give rise to reasonable suspicion or probable cause; (3) whether his flight following a "hair-raising" ride could be used to infer "consciousness of guilt," transforming the officer's "hunch" into reasonable suspicion; and (4) whether his flight of only 150 feet from the scene and his subsequent non-threatening approach toward the officer created an independent basis for reasonable suspicion or probable cause. In its answer brief, the State claims that Defendant failed to properly preserve his state constitutional argument for purposes of appeal. We address the parties' arguments below.

**Preservation of State Constitutional Claim**

**{11}** In his motion to suppress, Defendant argued that New Mexico courts have interpreted the state constitution to provide broader protections than the United States Constitution, asserting that Officer Soto's conduct in this case was illegal under both. Defendant interprets *State v. Gomez*, 1997-NMSC-006, 122 N.M. 777, 932 P.2d 1 to stand for the proposition that a defendant may preserve his claim under our state constitution by first citing a case addressing unconstitutional searches and then by presenting supporting facts. *Id.* ¶¶ 2, 24-25. According to Defendant, based on the long history under our state constitution of protecting the liberty interests and privacy rights of citizens, his "mere departure" from a wrecked vehicle abandoned by the driver does not provide reasonable suspicion to justify "a brief investigative detention" and that his warrantless seizure was illegal under the New Mexico Constitution because it was not based on reasonable suspicion or probable cause. Our Supreme Court decided *Harbison* based on the United States Constitution, stating that because the issue was not raised on appeal, it would not address whether Article II, Section 10, of our state constitution would require a different result. *Harbison*, 2007-NMSC-016, ¶ 16 n.3. The State points out that Defendant cites no cases argued under our state constitution in which appellate courts have decided the extent to which flight from the scene of a crime may be considered for purposes of reasonable suspicion.

**{12}** We recently held that when a state constitutional claim is asserted and there are no New Mexico cases on point to support a departure from federal authority, preservation of the claim requires a party to "cite the relevant constitutional principle and assert in the district court that the state constitutional provision at issue should be interpreted more expansively than the federal counterpart and provide reasons for interpreting the state provision differently from the federal provision." *State v. Garcia*, 2008-NMCA-044, ¶ 10, 143 N.M. 765, 182 P.3d 146, *cert. granted*, 2008-NMCERT-003, 143 N.M. 682, 180 P.3d 1181; *see Gomez,* 1997-NMSC-006, ¶¶ 22-23.

**{13}** In his suppression motion, Defendant made only a broad statement about our state constitution providing greater protection than the United States Constitution. He did not refer to any particular constitutional provision or principle, and he did not provide reasons

4

for interpreting any provision of our constitution differently from its federal counterpart. His reference to *Gomez*, without more, is insufficient. The remainder of his motion cited cases and facts supporting the allegation that he was seized without reasonable suspicion or probable cause when Officer Soto kicked him in the stomach and "forced" him to the ground. Such argument does not meet the requirements of either *Garcia* or *Gomez*.

{14}    Both the State's response below and the district court's order show that neither was alerted to the argument that, under our state constitution, Defendant's flight could not be used to support reasonable suspicion. Preservation of an argument for purposes of appeal requires that Defendant specifically apprise the district court of the claimed error and invoke an intelligent ruling thereon. *See, e.g.*, *State v. Varela*, 1999-NMSC-045, ¶¶ 25-26, 128 N.M. 454, 993 P.2d 1280. Both the district court and the State must be alerted to the specific claim of error in order to allow the State a fair opportunity to respond, to show the district court why it should not rule in Defendant's favor, and to allow the district court the opportunity to correct any mistake. *See Gomez*, 1997-NMSC-006, ¶ 29. This also ensures that the appellate court is provided with an adequate record for review. *See State v. Lucero*, 116 N.M. 450, 453, 863 P.2d 1071, 1074 (1993).

{15}    Defendant did not comply with the requirements established in *Garcia* and *Gomez* for preserving his claim under the state constitution. He alerted neither the district court nor the State to his argument that the New Mexico State Constitution provides more protection than the United States Constitution to the passenger of a vehicle who decides to run away after the vehicle is involved in a crash. Because Defendant did not adequately preserve this argument for appeal, we will not address it.

**Reasonable Suspicion for Stop and Detention Under Fourth Amendment**

{16}    Defendant argues that Officer Soto did not have reasonable suspicion to stop or detain him. Reasonable suspicion is "'a particularized and objective basis' for suspecting the person stopped of criminal activity." *State v. Funderburg*, 2008-NMSC-026, ¶ 15, 144 N.M. 37, 183 P.3d 922 (citation omitted). Reasonable suspicion is analyzed at the point when an actual seizure occurs. *See Harbison*, 2007-NMSC-016, ¶ 10; *see also Garcia*, 2008-NMCA-044, ¶ 16 (distinguishing between seizure by physical force and seizure by show of authority: (1) seizure by show of authority requires both that a reasonable person would believe he was not free to leave and actually submitted to the show of authority; and (2) seizure by physical force occurs where there is "grasping or application of physical force with lawful authority") (internal quotation marks and citation omitted).

{17}    It is difficult to know what Defendant perceived or believed because we have only Officer Soto's testimony as our guide. Defendant advances inconsistent arguments as to when he was arrested or submitted to Officer Soto's show of authority. He claims that when he stopped, turned around, and became aware that Officer Soto "had a gun trained on him," he was under arrest; but he also claims that Officer Soto's show of authority was "invalid" because it was made in the absence of reasonable suspicion. Later in his brief, Defendant suggests that when he turned to face Officer Soto, he saw "a guy in jeans and shirt" who was "saying something," and that it was "unclear whether [Defendant] saw that the man was holding a gun." The facts indicate that Defendant ran some distance while Officer Soto

5

chased him shouting "Police, stop" before stopping and turning around. It is at this moment that Defendant submitted to Officer Soto's authority. Therefore, we determine whether reasonable suspicion existed at that point.

**{18}** Although reasonable suspicion cannot be based merely on an officer's intuition or hunches, it "can arise from wholly lawful conduct." *Harbison*, 2007-NMSC-016, ¶ 15 (internal quotation marks and citation omitted). When reviewing a claim regarding reasonable suspicion, we "must necessarily take into account the evolving circumstances" facing the officer. *Funderburg*, 2008-NMSC-026, ¶ 16 (internal quotation marks and citation omitted). Furthermore, "[a]n officer's continued detention of a suspect may be reasonable if the detention represents a graduated response to the evolving circumstances of the situation." *Id.*

**{19}** Without factual support, Defendant claims that when he exited and ran from the minivan, he was not running from police. He asserts that he was "trapped" in the minivan during a "demolition derby" experience, was shocked and frightened, and was running "to a less precarious location" to get out of danger. But this claim lacks support from the evidence. *See In re Estate of Keeney*, 121 N.M. 58, 60, 908 P.2d 751, 753 (Ct. App. 1995) (indicating that this Court will consider only matters that were considered by the district court at the time it made its decision). Therefore, because Defendant argues that he did not engage in the type of "unprovoked flight upon noticing police" discussed in *Harbison*, 2007-NMSC-016, ¶ 19, we look to the facts in the record—that Officer Soto had turned on his lights and siren prior to the driver and Defendant exiting the van and that Officer Soto was himself already outside his own vehicle.

**{20}** Defendant claims his flight did not create the same quantum of reasonable suspicion present in *Harbison*. *Harbison* held that an officer cannot intentionally or unlawfully frighten or provoke a person into fleeing and then use that flight to justify a stop of the person. *Id.* ¶ 19. In circumstances where the police action itself was not intended to incite flight—and officers were on the scene attempting to deal with a situation involving probable cause to believe illegality was afoot—flight can be a circumstance that is properly evaluated to establish reasonable suspicion. *Id.* ¶ 20. As we stated above, after seeing the minivan driven recklessly and hitting cars, Officer Soto moved his vehicle, engaged his lights, and radioed for more units to come to the scene of the accident. Officer Soto was just beginning to get out of his car when the minivan's driver jumped out and ran over a concrete barrier and across three lanes of moving traffic. He was followed almost immediately by Defendant, who fled in the opposite direction through standstill traffic. We hold that under the circumstances of this case, evidence of Defendant's flight was properly included in the district court's determination of reasonable suspicion. There is nothing to suggest that Officer Soto unlawfully provoked Defendant into fleeing. He was simply sitting in rush-hour traffic when the van attracted his attention. As discussed in *Harbison*, the lack of provocation is critical to whether evidence of flight can be used to support reasonable suspicion. *Id.* ¶ 19. Here, because Defendant's flight was unprovoked and occurred after Officer Soto made his presence known by activating his lights, the district court properly factored Defendant's flight into its reasonable-suspicion analysis. *Id.* ¶ 20.

6

**{21}** Defendant appears to claim that his flight from the scene cannot be considered under a reasonable suspicion analysis because he was only a passenger and not the person guilty of reckless driving. Relying on *State v. Affsprung*, 2004-NMCA-038, 135 N.M. 306, 87 P.3d 1088, Defendant argues that it was only an "unfortunate coincidence" that he was a passenger in the vehicle and that this fact alone cannot create a reasonable suspicion. In *Affsprung*, the officer obtained identification from the defendant—a passenger in the stopped vehicle—even though the officer had only a generalized concern but had no suspicion that the defendant was involved in criminal activity and no particularized concern about his safety. *Id.* ¶ 19.

**{22}** In this case, on the other hand, Officer Soto had more than just a general concern. Officer Soto testified that based on his ten years of experience, when a minivan comes through traffic, wrecking several vehicles in the process, and both occupants immediately exit and run away, there is reason to believe that the occupants committed or are committing a crime or are subject to pending warrants. Officer Soto also testified that he believed Defendant was committing a crime by leaving the scene of an accident. *See State v. Anaya*, 2008-NMCA-020, ¶¶ 13-14, 143 N.M. 431, 176 P.3d 1163 (holding that police must develop reasonable suspicion based on "objective facts" available to the officer that would cause a reasonable person to believe that the subject of the officer's focus is, or will be, engaged in criminal activity). Based on his experience, Officer Soto reasonably believed the minivan might have been stolen or that the occupants were "trying to run from something, get away for some reason." As described in *Illnois v. Wardlow*,

> Headlong flight—wherever it occurs—is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such. In reviewing the propriety of an officer's conduct, courts do not have available empirical studies dealing with inferences drawn from suspicious behavior, and we cannot reasonably demand scientific certainty from judges or law enforcement officers where none exists. Thus, the determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior.

528 U.S. 119, 124-25 (2000) (citation omitted). It is clear from Officer Soto's testimony that he had more than the "general concern" discussed in *Affsprung*.

**{23}** Officer Soto was a witness to the events at the scene when the minivan plowed through several cars and came to a stop, was attempting to investigate what had just occurred, and was acting in his capacity as a police officer to "maintain the status quo" pending an investigation. *Harbison*, 2007-NMSC-016, ¶ 20. In *State v. Duran*, 2005-NMSC-034, ¶ 40, 138 N.M. 414, 120 P.3d 836, our Supreme Court determined that, based on the totality of the circumstances and the officer's observations, there was support for the officer's conclusion that it was likely that criminal activity was afoot, particularly where that conclusion was based on more than "innocuous circumstances or facts that would seem innocent to a layperson." Similarly, under the totality of the circumstances and Officer Soto's observations in this case, his conclusion that Defendant was or had been engaged in criminal activity was not based on "innocuous circumstances." *Id.* Evidence of Defendant's flight, the evolving circumstances witnessed by Officer Soto, the officer's beliefs based on

ten years of experience, and the fact that Defendant's behavior would not be considered by a reasonable layperson to be merely innocuous or innocent provided the requisite reasonable suspicion to stop and detain Defendant for purposes of investigating the incident. *See, e.g.*, *id.*

**Probable Cause for Arrest**

**{24}**    Defendant claims that Officer Soto lacked probable cause to arrest him.    In determining whether an officer had probable cause for an arrest, we look at the facts and circumstances within the officer's knowledge and determine whether they would cause a reasonable, cautious officer to believe that a criminal offense was being committed. *State v. Hawkins*, 1999-NMCA-126, ¶ 17, 128 N.M. 245, 991 P.2d 989.   "Probable cause does not require that an officer's belief be correct or more likely true than false." *State v. Williams*, 117 N.M. 551, 557, 874 P.2d 12, 18 (1994). In this case, Officer Soto testified that he was running after Defendant while loudly yelling, "Police, stop," approximately ten times over the course of the chase.  He was never more than forty-five or fifty feet from Defendant during this time.  It was a "nice day" and "still very bright" outside.  Officer Soto displayed his badge around his neck and held his gun in his hand.  When Defendant continued to run despite Officer Soto's orders to stop, Officer Soto concluded that Defendant was committing the crime of failing to obey or comply with the orders of a police officer. *See* NMSA 1978, § 30-22-1(B) (1981) (defining resisting or evading an officer as "intentionally fleeing, attempting to evade or evading an officer of this state when the person committing the act of fleeing, attempting to evade or evasion has knowledge that the officer is attempting to apprehend or arrest him").   At that point, Defendant refused to obey Officer Soto's commands. *See, e.g.*, *Harbison*, 2007-NMSC-016, ¶ 10.  Officer Soto had the authority to apprehend Defendant, but Defendant attempted to evade apprehension, which satisfies the first portion of Section 30-22-1(B).  Again, to the extent Defendant has a contrary, subjective interpretation of the facts, such an interpretation is unsupported by the record.

**{25}**    The second portion of the statute—whether Defendant had knowledge that Officer Soto was attempting to apprehend him—was also met in this case.  Despite the fact that Defendant claims there was no evidence to support a finding that he knew the officer was attempting to apprehend him, the district court could have inferred that Defendant was aware of Officer Soto's intentions based on:  (1) evidence of Defendant's immediate flight from the scene of an accident involving several vehicles after Officer Soto activated his lights; (2) Officer Soto's testimony that he was yelling loudly and identifying himself; (3) the fact that Officer Soto was never farther than forty-five or fifty feet from Defendant;  and (4) that these events occurred on a clear, bright day and that there was therefore no reason Defendant would have been unable to see the officer behind him. *See, e.g.*, *State v. Gutierrez*, 2007-NMSC-033, ¶ 36, 142 N.M. 1, 162 P.3d 156. Viewing the facts in the light most favorable to the district court's decision, we agree with the district court that Defendant knew Officer Soto was attempting to apprehend him but refused to obey Officer Soto's commands to stop. We hold that Officer Soto had both reasonable suspicion to attempt to apprehend Defendant and probable cause to arrest him for evading and resisting arrest.

**{26}**    Defendant seems to claim that because Officer Soto did not question him as he escorted him back to the patrol car, the detention was illegal.  But Defendant cites no

authority in support of his contention. An appellate court will not consider an issue if no authority is cited in support of the issue. *In re Adoption of Doe*, 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984).

**CONCLUSION**

**{27}**    We hold that Officer Soto had reasonable suspicion to stop and detain Defendant. We further hold that once Defendant ignored Officer Soto's commands to stop and continued to flee, Officer Soto had probable cause to arrest him for evading or resisting. We do not address issues that were not properly preserved, and we do not consider claims not made to the district court. We affirm the district court's denial of Defendant's motion to suppress evidence in this case.

**{28}    IT IS SO ORDERED.**

_____
**RODERICK T. KENNEDY, Judge**

**WE CONCUR**:

_____
**CELIA FOY CASTILLO, Judge**

_____
**MICHAEL E. VIGIL, Judge**

**Topical Index for *State v. Maez*, No. 27,528**

| **AE** | **APPEAL & ERROR** |
|---|---|
| AE-PA | Preservation of Issues for Appeal |
| AE-SR | Standard of Review |
| | |
| **CA** | **CRIMINAL PROCEDURE** |
| CA-MR | Motion to Suppress |
| CA-PA | Probable Cause |
| CA-RS | Reasonable Suspicion |
| CA-SZ | Search and Seizure |
| CA-SI | Search Incident to Arrest |
| CA-WA | Warrantless Arrest |
| CA-WS | Warrantless Search |
| | |
| **CT** | **CONSTITUTIONAL LAW** |
| CT-MW | Miranda Warnings |
| CT-NM | New Mexico Constitution, General |
| CT-SU | Suppression of Evidence |

**CL**          **CRIMINAL LAW**
CL-CL          Controlled Substances
CL-RA          Resisting Arrest