This decision of the Supreme Court of New Mexico was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Supreme Court.

## IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**Filing Date: February 6, 2023**

**No. S-1-SC-39004**

**STATE OF NEW MEXICO,**

　　　　Plaintiff-Respondent,

v.

**FRANCISCO JAVIER GRANADOS,**

　　　　Defendant-Petitioner.

**ORIGINAL PROCEEDING ON CERTIORARI**
**Steven Blankinship, District Judge**

Bennett J. Bauer, Chief Public Defender
Kimberly M. Chavez Cook, Assistant Appellate Defender
Santa Fe, NM

for Petitioner

Hector H. Balderas, Attorney General
Charles J. Gutierrez, Assistant Attorney General
Santa Fe, NM

for Respondent

### DECISION

**VARGAS, Justice.**

**{1}** Four narcotics agents working with the Otero County Narcotics Enforcement Unit (NEU) attempted to stop Defendant Francisco Javier Granados based on a confidential informant tip and the agents' brief surveillance of Defendant interacting with a woman at an Alamogordo gas station. When confronted by the agents, Defendant fled. During the ensuing vehicle pursuit, one of the agents saw Defendant toss an object out of his left front window. Shortly after, Defendant stopped and spoke with the agents. Another agent backtracked and recovered the object Defendant had discarded. That object turned out to be a plastic bag containing approximately fifty grams of cocaine.

**{2}** Defendant made two motions to suppress, arguing that the NEU agents did not have a legitimate basis on which to stop him. The district court denied the motions because it concluded that Defendant was not seized and that the agents possessed a reasonable suspicion that Defendant was engaging or about to engage in illegal conduct. Defendant was convicted of trafficking a controlled substance (possession with intent to distribute), contrary to NMSA 1978, Section 30-31-20(A)(3) (2006) and tampering with evidence, contrary to NMSA 1978 Section 30-22-5 (2003). The Court of Appeals affirmed the district court's order denying suppression in a split opinion, concluding only that the agents possessed reasonable suspicion to stop Defendant when they first confronted him. *State v. Granados*, A-1-CA-37417, mem. op. ¶¶ 6-14 (N.M. Ct. App. July 26, 2021) (nonprecedential).

**{3}** We granted Defendant's petition for writ of certiorari and reverse the Court of Appeals. We hold that Defendant's seizure was unreasonable under Article II, Section 10 of the New Mexico Constitution. Because the issues have been previously decided and we reverse based on the absence of substantial evidence, we dispose of this case by nonprecedential memorandum opinion. Rule 12-405(B)(1), (2) NMRA.

## I.  BACKGROUND

**{4}** The relevant facts are largely undisputed. On April 29, 2013, NEU Agent Rodney Scharmack received a phone call from a confidential informant. This informant was a "documented reliable informant," meaning that the informant was known to the NEU and had previously assisted in narcotics investigations. The informant said that Defendant was in possession of and distributing a large amount of cocaine. The informant was not able to provide a physical address for Defendant, but described two of Defendant's vehicles: a black pickup truck and a black Chrysler 300 sedan.

**{5}** Agent Scharmack was already familiar with Defendant from past narcotics investigations. NEU agents had also received incriminating information about Defendant "here and there" in the weeks prior to this particular informant tip, and Defendant was currently "on [NEU's] radar" for narcotics trafficking offenses.

**{6}** On May 2, 2013, Agent Scharmack, NEU Commander Neil LaSalle, Border Patrol Agent Timothy Huffman, and NEU Agent Obed Marte were patrolling Alamogordo in an unmarked surveillance vehicle. The four agents spotted Defendant sitting alone in his black pickup truck in the parking lot of a local grocery store. The agents decided to follow Defendant and trailed him to a Giant gas station on the outskirts of Alamogordo.

**{7}** As the agents drove by the gas station, they observed Defendant reversing his truck into a parking spot in an open gravel lot next to the convenience store. The agents then saw a smaller white pickup pull up near Defendant's truck. The agents recognized the white pickup and believed that it belonged to a previous target of their narcotics trafficking investigations, Anthony Montoya.

**{8}** The agents saw a woman exit the white pickup and approach Defendant's open left front window. Although the agents described the interaction between the woman and Defendant as "almost like an exchange," the agents did not actually see Defendant and the woman exchange anything. Nevertheless, each of the agents asserted that, in

light of their "training and experience," they believed that Defendant was then engaging or about to engage in a narcotics transaction with the woman. However, the agents did not identify which facts about this interaction led them to suspect that the two individuals were exchanging narcotics, or explain how their training and experience infused special meaning into the interaction that they observed. For example, Agent Huffman testified that his suspicions were aroused because of the tip and his knowledge of Defendant and Anthony Montoya through past investigations.

{9}     The agents decided to "make contact" with Defendant at that point. Having already driven about half a block away, the agents made a U-turn and proceeded back to the gas station. The agents planned to stop their surveillance vehicle in front of Defendant's truck, but their vehicle overshot its intended destination and skidded to a stop just past the truck. The agents exited their vehicle, approached Defendant's open window, shouted "Sheriff's Office" or "Otero County," and ordered Defendant to exit his vehicle. The agents were dressed in civilian clothes but were displaying official badges in either their hands or hanging from lanyards around their necks. At least one of the agents had his hand on his holstered weapon.

{10}    Defendant pointed his finger at the agents with a surprised look on his face. He then grabbed his steering wheel and sped out of the lot. Agent Scharmack, Commander LaSalle, and Agent Huffman returned to their vehicle and followed Defendant. Agent Marte stayed behind and briefly spoke with the woman from the white pickup. The woman was Defendant's mother, but the agents only later learned of her identity and relationship to Defendant.

{11}    The agents followed Defendant through a nearby residential area. At one point during the pursuit, Agent Huffman saw Defendant toss a white, softball-sized object out of his front window. After taking a few more turns, Defendant stopped his truck in the middle of the road. The agents pulled up directly behind Defendant's truck. Defendant exited his vehicle and began asking the agents questions. During this conversation, Defendant specifically addressed Commander LaSalle as "Neil," using the Commander's given name.

{12}    While the other agents spoke with Defendant, Commander LaSalle backtracked into the nearby residential area and recovered the object that Defendant had discarded. That object was a plastic bag containing 49.97 grams (1.76 ounces) of cocaine.

{13}    In response to the State's charges, Defendant made motions to suppress both prior to and at trial, arguing that the narcotics evidence was obtained in violation of his rights under the Fourth Amendment to the United States Constitution and Article II, Section 10 of the New Mexico Constitution. The State argued that the motions should be denied because Defendant was not seized at the gas station. Alternatively, the State argued that the agents had reasonable suspicion to stop Defendant when they first approached him at the gas station. The district court denied suppression, agreeing with the State that Defendant was not seized at the gas station.

{14}    On direct appeal from his convictions for trafficking and tampering with evidence, a majority of the Court of Appeals affirmed the district court. *Granados*, A-1-CA-37417, mem. op. ¶¶ 6-14. Unlike the district court, however, the Court of Appeals did not

consider when Defendant was effectively seized. *Id.* ¶ 7 n.2. The Court of Appeals instead explained that the totality of the circumstances supported a reasonable suspicion to stop Defendant at the time the agents decided to confront Defendant at the gas station. *Id.* ¶ 7. According to the majority, those circumstances included: "(1) the agents' knowledge that Defendant was a known drug trafficker; (2) a tip from a reliable [confidential informant]; (3) the agents' verification of specific aspects of the tip's information; and (4) the agents' belief, based on substantial training and experience, that Defendant was engaged in criminal activity." *Id.* ¶ 7. Judge Attrep filed a dissenting opinion, arguing that Defendant's seizure was not shown to be objectively reasonable for reasons that we find persuasive here. *Id.* ¶¶ 30-39 (Attrep, J., dissenting).

**{15}**    We granted Defendant's petition for writ of certiorari and have jurisdiction. Rule 12-502 NMRA. In addition to challenging the decision on his motion to suppress, Defendant raises three other issues for our review. As we hold that Defendant's seizure was unreasonable under Article II, Section 10, we discuss only the suppression issue and do not reach the merits of Defendant's remaining challenges. We also do not address Defendant's arguments regarding the asserted staleness of the confidential informant tip because we conclude that the tip was not shown to be reliable.

## II.    STANDARD OF REVIEW

**{16}**    Our review of a motion to suppress evidence presents mixed questions of law and fact. *State v. Neal*, 2007-NMSC-043, ¶ 15, 142 N.M. 176, 164 P.3d 57. With respect to questions of fact, we defer to the findings of the district court if supported by substantial evidence. *State v. Urioste*, 2002-NMSC-023, ¶ 6, 132 N.M. 592, 52 P.3d 964. Further, "[a]n appellate court must indulge in all reasonable inferences in support of the district court's decision and disregard all inferences or evidence to the contrary." *State v. Martinez*, 2018-NMSC-007, ¶ 15, 410 P.3d 186 (text only)[1] (citation omitted).

**{17}**    We review questions of law de novo. *Urioste*, 2002-NMSC-023, ¶ 6. "This Court sits as final arbiter of what the law is and how it applies to any given set of facts." *State v. Martinez,* 2020-NMSC-005, ¶ 16, 457 P.3d 254. As relevant to the current appeal, these questions of law include whether, in light of the facts presented, a defendant was subjected to "such a level of accosting and restraint" so as to be seized, *State v. Jason L.*, 2000-NMSC-018, ¶ 19, 129 N.M. 119, 2 P.3d 856, or whether a seizure was objectively reasonable. *State v. Rowell*, 2008-NMSC-041, ¶ 8, 144 N.M. 371, 188 P.3d 95. "Warrantless seizures are presumed to be unreasonable and the State bears the burden of proving reasonableness." *Id.* ¶ 10 (internal quotation marks and citation omitted).

---

[1]The "text only" parenthetical as used in this decision indicates the omission—for enhanced readability—of all of the following nontextual marks that may be present in the source text: brackets, ellipses, and internal quotation marks.

## III.   DISCUSSION

### A.   Reasonable Suspicion

{18}   The Fourth Amendment to the United States Constitution and Article II, Section 10 of the New Mexico Constitution "provide overlapping protections against unreasonable searches and seizures, including safeguards for brief investigatory stops of persons or vehicles that fall short of traditional arrest." *Martinez*, 2018-NMSC-007, ¶ 10 (text only) (citations omitted). Although Defendant previously asserted that his seizure violated both the federal and state constitutions, in his briefing to this Court, Defendant argues only that his seizure violated Article II, Section 10. We therefore consider the issues presented only under state constitutional law.

{19}   Like the federal constitution, the New Mexico constitution permits a law enforcement officer with "a reasonable suspicion that the law is being or has been broken to conduct a temporary, investigatory . . . stop." *State v. Yazzie*, 2016-NMSC-026, ¶ 38, 376 P.3d 858. "Police officers possess reasonable suspicion when they are aware of specific articulable facts that, judged objectively, would lead a reasonable person to believe criminal activity occurred or was occurring." *Urioste*, 2002-NMSC-023, ¶ 6 (internal quotation marks and citation omitted). In evaluating whether an officer possessed a reasonable suspicion of illegal conduct, "the totality of the circumstances— the whole picture—must be taken into account." *Martinez*, 2020-NMSC-005, ¶ 19 (quoting *United States v. Cortez*, 449 U.S. 411 (1981)). An officer's "[u]nsupported intuition and inarticulate hunches are not sufficient." *State v. Cobbs*, 1985-NMCA-105, ¶ 12, 103 N.M. 623, 711 P.2d 900.

{20}   In the present appeal, the parties dispute whether the NEU agents had reasonable suspicion to stop Defendant at the gas station. The parties specifically debate whether the confidential informant's tip and the agent's surveillance provided sufficient grounds for the stop. As the parties center their debate on these two facts, we specifically discuss the standards relevant to each; but in keeping with the totality of the circumstances approach to reasonable suspicion analysis, *see Martinez*, 2020-NMSC-005, ¶ 19 (requiring court to consider the totality of the circumstances  when evaluating reasonable suspicion), we consider all facts and reasonable inferences available to the agents at the time they confronted Defendant. *See Yazzie*, 2016-NMSC-026, ¶ 19 (explaining that courts must consider whether the officer's action was justified at its inception).

### 1.   The confidential informant's tip

{21}   Defendant argues that the confidential informant's tip was unreliable. In *State v. Cordova*, 1989-NMSC-083, 109 N.M. 211, 784 P.2d 30, this Court adopted the two-pronged test of *Aguilar v. Texas*, 378 U.S. 108 (1964) and *Spinelli v. United States*, 393 U.S. 410 (1969) ("*Aguilar-Spinelli* test"), to evaluate whether an officer could reasonably rely on information obtained from an unnamed informant under Article II, Section 10. *Cordova*, 1989-NMSC-083, ¶ 17. In adopting the *Aguilar-Spinelli* test, we declined to follow the totality of the circumstances approach adopted by the United States Supreme Court in *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983), to evaluate tips from confidential informants under the Fourth Amendment. *Cordova,* 1989-NMSC-083, ¶ 17.

**{22}** *Cordova* and *Aguilar-Spinelli* require officers who rely "wholly or in part on hearsay provided by an unnamed informant" in justifying a seizure to identify (1) "some of the underlying circumstances from which the informant concluded that the facts were as he claimed they were," and (2) "some of the underlying circumstances from which the officer concluded that the informant was credible or his information reliable." *Cordova*, 1989-NMSC-083, ¶ 6 (text only) (quoting *Aguilar*, 378 U.S. at 114); *see also* Rule 5-208(C) NMRA ("The showing of probable cause shall be based upon substantial evidence, which may be hearsay in whole or in part, provided there is a substantial basis for believing the source of the hearsay to be credible and for believing that there is a factual basis for the information furnished."). "[T]he two prongs of *Aguilar-Spinelli* and of [Rule 5-208(C)] have been characterized as independent and analytically severable requirements." *Cordova*, 1989-NMSC-083, ¶ 12 (internal quotation marks and citation omitted).

**{23}** The first prong of *Aguilar-Spinelli* is referred to as the *reliability* or *basis of knowledge* prong. *See State v. Eskridge*, 1997-NMCA-106, ¶ 19, 124 N.M. 227, 947 P.2d 502 ("Our Supreme Court in *Cordova* held that the allegations of an informant alone cannot provide probable cause to issue a search warrant unless officers can show both (1) the reliability of the information and (2) credibility of the informant."); *see also State v. Gonzales*, 1999-NMCA-027, ¶ 23, 126 N.M. 742, 975 P.2d 355 ("[A] more precise name for the reliability prong is the *basis-of-knowledge* prong."). The basis of knowledge prong requires that the officer provide "the factual basis for any conclusions drawn by the informant to enable the court to perform an independent analysis of the facts and conclusions." *State v. Barker*, 1992-NMCA-117, ¶ 4, 114 N.M. 589, 844 P.2d 839. "Under the basis of knowledge prong of the test, we ask whether the affidavit provides a substantial basis for concluding the informants gathered the information of illegal activity in a reliable fashion." *State v. Haidle*, 2012-NMSC-033, ¶ 23, 285 P.3d 668 (text only) (citation omitted). "First-hand observations by the informant serve to meet the 'basis of knowledge' prong of the *Cordova* test." *Barker*, 1992-NMCA-117, ¶ 5; *see also State v. Lujan*, 1998-NMCA-032, ¶ 9, 124 N.M. 494, 953 P.2d 29 (explaining that an informant's participation in a controlled buy was sufficient to establish a reliable factual basis for the tip).

**{24}** The second prong of *Aguilar-Spinelli*, known as the *credibility* or *veracity* prong, requires that "facts be presented to the court to show either that the informant is inherently credible or that the information from the informant is reliable on this particular occasion." *Barker*, 1992-NMCA-117, ¶ 4. Defendant does not challenge the informant's veracity, but argues only that the informant's tip lacked a reliable basis of knowledge. We therefore limit our analysis to the first prong of *Cordova* and *Aguilar-Spinelli*.

**{25}** We agree with Defendant that the confidential informant tip was not shown to have a reliable factual basis. Agent Scharmack explained that he received information from a credible informant that Defendant was trafficking a large amount of cocaine. However, Agent Scharmack did not explain how this informant became aware of the information. It is unknown whether the informant, for example, participated in a controlled buy, otherwise personally observed Defendant's illicit conduct, or simply conveyed rumors or suppositions based on Defendant's reputation as a drug dealer.

Given this, no evidence was presented upon which the district court could evaluate whether Agent Scharmack's reliance on the hearsay information was reasonable.

**{26}** In this regard, the present appeal is analogous to *Cordova*, 1989-NMSC-083, as the affidavit at issue in that case asserted that the defendant was distributing heroin, but was utterly "devoid of any indication of how the informant gathered this information." *Id.* ¶ 21. The *Cordova* Court concluded that the tip was thus entitled to "little or no weight in determining" whether a search was warranted. *Id.* ¶ 22. Similarly, the tip received by Agent Scharmack is devoid of any supporting detail regarding the source of the informant's knowledge. The tip thus lacks a reliable factual basis and is entitled to little or no weight in our reasonable suspicion analysis.

**{27}** Also, like the tip in *Cordova*, the tip at issue here was not sufficiently detailed so that we may assume that the informant had a reliable factual basis for the information provided. *See id.* ¶ 25 (concluding that the police officer's corroboration of "only the informant's description of the house and car" was not sufficient to establish that the informant had a reliable factual basis to support the allegations of criminal conduct). When an informant's tip fails to specify the basis of the informant's knowledge, a court may nevertheless assume that the informant has a reliable factual basis for that information "if the informant describes the criminal activity in such detail that a judge will know the informant relies on more than a casual rumor or reputation of the defendant." *State v. Baca*, 1982-NMSC-016, ¶ 18, 97 N.M. 379, 640 P.2d 485. Such a detailed tip is said to be *self-verifying*. *See Cordova*, 1989-NMSC-083, ¶ 9 ("[W]hen an affidavit does not affirmatively state an informant's basis of knowledge, it may be inferred that an informant who otherwise is known to be credible obtained the information set forth in the affidavit in a reliable fashion *if* the tip contains enough detail to be *self-verifying*." (second emphasis added)).

**{28}** In assessing whether a tip is self-verifying, our courts frequently have made "a distinction between a tip predicting a subject's movements on the one hand, and on the other, a tip which merely describes a status quo, or the state of things at a given time, of which the subject is a part." *Urioste*, 2002-NMSC-023, ¶¶ 11-13. Thus, "where an informant's details were limited and provided only innocent facts unrelated to the alleged illegal activity, we found there was insufficient corroboration to rely on the hearsay." *Haidle*, 2012-NMSC-033, ¶ 26. In contrast, courts may infer that an informant possesses a reliable basis of knowledge when the corroborated portions of the tip conveyed specific, predictive information about the defendant's movements demonstrating a familiarity with the defendant's criminal conduct. *See, e.g., State v. Robbs*, 2006-NMCA-061, ¶¶ 2, 19, 139 N.M. 569, 136 P.3d 570 (concluding that hearsay information that a vehicle with a personalized license plate would be delivering narcotics to a specific street address was reliable "because significant aspects of the tip, including [the d]efendant's future movement, were corroborated by the officers prior to the stop"); *State v. Alderete*, 2011-NMCA-055, ¶ 18, 149 N.M. 799, 255 P.3d 377 (explaining that reasonable suspicion arose from "a tip from a reliable, confidential informant, which included specific, predictive information that a large amount of marijuana was going to be delivered to the house under surveillance").

**{29}** The informant's tip here did not predict Defendant's future movements, but only conveyed an allegation of trafficking and a generic description of Defendant's two

vehicles. The agents partially corroborated this detail, as they confirmed that Defendant drove at least one of the vehicles. However, standing alone, the type of vehicle driven by an individual is an innocuous, status quo detail that is readily observable by the public. *See State v. Bedolla*, 1991-NMCA-002, ¶ 15, 111 N.M. 448, 806 P.2d 588 (concluding that a search was unreasonable when the corroborated portions of an informant's tip, including a description of the defendant's vehicle, were all "readily available to any member of the public"). This detail does not reveal that the informant had any special familiarity with Defendant such that we can infer that there was a reliable factual basis for the informant's allegations.

**{30}** We thus conclude that the informant's tip fails the first prong of *Aguilar-Spinelli* and *Cordova*. The district court had insufficient evidence on which to conclude that the basis of the informant's knowledge was reliable, and thus the tip does not support a reasonable suspicion of criminal conduct.

## 2. The agents' surveillance

**{31}** We next consider whether the NEU agents' surveillance of Defendant supported a reasonable suspicion of illegal conduct. Defendant argues that the agents did not have reasonable suspicion because they only saw innocent activity and did not adequately explain why their training and experience suggested that he was engaging or about to engage in a narcotics exchange. The State responds that the agents described their qualifications as narcotics agents and sufficiently recounted the facts leading them to reasonably suspect Defendant of illegal conduct. Both parties also compare the facts of the current appeal to *Martinez*, 2020-NMSC-005, and *Neal*, 2007-NMSC-043.

**{32}** In *Neal*, a police officer observed a defendant briefly interact with a suspected narcotics dealer in front of a house that was under investigation for drug trafficking. 2007-NMSC-043, ¶¶ 4-5. The officer saw the two individuals meet at the window of the defendant's vehicle, but "could not see what, if anything, they were doing, aside from talking, and could not hear what they were saying." *Id.* ¶ 27. In concluding that the officer did not have reasonable suspicion to expand a subsequent traffic stop, the *Neal* Court explained that the defendant's "mere association with a convicted felon . . . who was under surveillance in an ongoing drug investigation, was insufficient to create reasonable suspicion." *Id.* ¶ 30. The "[d]efendant's innocent conduct and the surrounding circumstances, viewed together and indulging the factual inferences drawn by [the officer], do not constitute the type of individualized, specific, articulable circumstances necessary to create reasonable suspicion that [the d]efendant himself was involved in criminal activity." *Id.* ¶ 31.

**{33}** In *Martinez*, an officer was surveilling a gas station in a high drug crime area when he saw the defendant and his accomplice briefly interact with an individual in the parking lot of a gas station and in the rear seat of the defendant's vehicle. *Martinez*, 2020-NMSC-005, ¶ 4. Shortly after, the officer saw the defendant and his accomplice briefly meet with another, unrelated individual in the rear seat of the defendant's vehicle. *Id.* ¶ 5. The officer testified that, based on his training and experience, the circumstances of the two meetings suggested the defendant might have been trafficking narcotics. *Id.* ¶ 6. Importantly, "[w]hen asked why he suspected" trafficking, the officer

explained that he had participated in back-seat drug exchanges while working undercover at that gas station, and that the two interactions he observed were "consistent with what [he had] done and seen." *Id.* ¶¶ 3, 6. The *Martinez* Court concluded that the potentially innocent facts observed by the officer supported a reasonable suspicion to stop. *Id.* ¶ 25. Because the officer observed the defendant "partake in two instances of exactly the kind of drug activity [the officer] had previously observed at the [gas station]," the Court explained that the officer's "suspicion was grounded upon specific facts and rational inferences from those facts." *Id.*

**{34}** We agree with Defendant that this appeal is analogous to *Neal* and distinguishable from *Martinez*, in that the agents did not articulate specific facts supporting a reasonable suspicion of illegal conduct. Like the *Neal* Court, we cannot reasonably infer criminal activity based on the fact that Defendant met with a woman who was driving a vehicle similar to Anthony Montoya's white pickup. Although the NEU agents described this meeting between Defendant and the then-unidentified woman as "almost like an exchange," they did not see Defendant and the woman actually exchange anything. Nor could the agents hear anything the two individuals were saying, as the agents were still driving when they decided to "make contact" with Defendant. All the agents saw was Defendant meeting with someone potentially associated with a suspected narcotics dealer.

**{35}** Similar to *Neal*, Defendant's "mere association" with an individual driving a suspicious vehicle did not provide sufficient grounds for an investigatory stop. *Neal*, 2007-NMSC-043, ¶ 30. Our courts have repeatedly emphasized, "[g]uilt by association and generalized suspicions are insufficient grounds upon which to base an investigatory detention." *State v. Prince*, 2004-NMCA-127, ¶ 17, 136 N.M. 521, 101 P.3d 332; *see also State v. Jones*, 1992-NMCA-064, ¶ 15, 114 N.M. 147, 835 P.2d 863 (refusing to infer that "gang membership and presence in a gang activity area [were] sufficient alone to support reasonable suspicion"); *In re Eli L.*, 1997-NMCA-109, ¶ 13, 124 N.M. 205, 947 P.2d 162 (concluding that an officer's knowledge that juvenile was a gang member and "may have been warning other gang members that officers were present" was insufficient to give rise to a reasonable suspicion of criminal activity); *State v. Graves*, 1994-NMCA-151, ¶ 17, 119 N.M. 89, 888 P.2d 971 (holding that a defendant's "mere presence" at a location subject to a search warrant was insufficient to "justify the arrest or detention of a person, other than the resident, at a residence lawfully being searched"). In the absence of any additional facts suggestive of trafficking, it was not reasonable for the agents to believe that Defendant was engaging or about to engage in a narcotics exchange with the woman.

**{36}** We also do not see the agents' unadorned invocation of their "training and experience" as sufficient to establish reasonable suspicion. Each of the NEU agents recounted their qualifications as narcotics agents, testified to their observations, and opined that Defendant was trafficking. However, the agents did not explain how their expertise informed their understanding of the apparently innocent facts they observed. In the absence of this explanation, we cannot conclude that these facts were objectively suggestive of illegal conduct.

**{37}** We acknowledge that "[a] reasonable suspicion of criminal activity can arise from wholly lawful conduct." *Urioste,* 2002-NMSC-023, ¶ 10 (internal quotation marks and

citation omitted). An officer is not required to rule out innocent explanations for suspicious activity before performing an investigatory stop, "because the principal function of an investigation is to resolve whether certain activity is in fact legal or illegal." *Martinez*, 2020-NMSC-005, ¶ 31. We also "recognize that officers may draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." *Neal*, 2007-NMSC-043, ¶ 21 (internal quotation marks and citation omitted). A reviewing court considers an officer's training and experience when the officer's expertise "enhanced [the officer's] ability to derive and articulate particularized and objective indicia of criminal activity" from otherwise innocent-seeming facts. *State v. Van Dang*, 2005-NMSC-033, ¶ 16, 138 N.M. 408, 120 P.3d 830.

**{38}** However, if an officer intends to rely on the officer's training and experience to derive meaning from circumstances that would seem innocent to a lay observer, then "it is incumbent upon the arresting or searching officer to explain the nature of [the officer's] expertise or experience and how it bears upon the facts which prompted the officer to arrest or search." 2 Wayne R. LaFave, *Search & Seizure: A Treatise on the Fourth Amendment* § 3.2(c) (6th ed. 2021). Accordingly, in *Martinez* we reiterated, "[w]hen an officer relies upon training and experience to effectuate a stop, it is necessary that the officer explain *why* [the officer's] knowledge of particular criminal practices gives special significance to the apparently innocent facts observed." 2020-NMSC-005, ¶ 22 (internal quotation marks and citation omitted). "Or, as was said in *Terry v. Ohio*, [392 U.S. 1, 21 (1968),] 'the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion.'" *Martinez*, 2020-NMSC-005, ¶ 22 (brackets omitted).

**{39}** This requirement that officers provide specific, articulable facts is central to our search and seizure jurisprudence and is in keeping with the judiciary's role as the ultimate arbiter of a seizure's reasonableness. We employ an objective standard for assessing whether an officer's suspicion was reasonable in light of all the circumstances, and "the subjective belief of the officer does not in itself affect the validity of the stop." *Yazzie*, 2016-NMSC-026, ¶ 20 (text only) (citation omitted). "The purpose of requiring objectively reasonable suspicion based on the circumstances is to prevent and invalidate police conduct based on hunches, which are, by definition, subjective." *State v. Ochoa*, 2009-NMCA-002, ¶ 25, 146 N.M. 32, 206 P.3d 143 (internal quotation marks and citation omitted); *see also Alderete*, 2011-NMCA-055, ¶ 11 (noting that the purpose of an objective standard "is to prevent officers from arbitrarily acting on whims or unsupported hunches" (internal quotation marks and citation omitted)).

**{40}** For example, the *Martinez* Court concluded that the officer's subjective suspicions were reasonable because the officer explained why, in light of his training and experience, the two interactions he observed in the back seat of the defendant's vehicle suggested the defendant may have been trafficking. *Martinez*, 2020-NMSC-005, ¶¶ 3-6. Similarly, in *State v. Hernandez*, 2016-NMCA-008, ¶¶ 14-16, 364 P.3d 313, the Court of Appeals distinguished *Neal* and held that officers there had reasonable suspicion to stop a vehicle because the officers linked the vehicle to a pattern of narcotics transactions.

**{41}**     In the current appeal, we are missing that vital logical connection between the agents' expertise and the facts presented. Without this connection, this Court cannot assess the objective reasonableness of the agent's subjective suspicions. For example, in its briefing on appeal, the State argues that the agents could have inferred illegal activity from Defendant's parking position, as the agents recounted that Defendant reversed his vehicle into a parking spot. But the agents did not make this inference or otherwise explain why Defendant's parking position was suggestive of illegal conduct. On the record presented, we cannot reasonably infer that reversing into a parking space at a gas station objectively suggests that an individual is going to exchange narcotics with another individual. We therefore conclude that the agents' surveillance did not establish reasonable suspicion that Defendant was about to engage or was engaging in a narcotics exchange at the gas station.

### 3.     Totality of the circumstances

**{42}**     Although we have identified deficiencies in the two circumstances discussed above, a "reasonable suspicion determination requires us to assess the totality of the circumstances," and we must not engage in "a divide-and-conquer analysis in which we view each individual factor or circumstance in a vacuum." *Neal*¸ 2007-NMSC-043, ¶ 28 (text only) (citation omitted). However, we conclude that the facts, viewed objectively and as a whole, did not support a reasonable suspicion to stop.

**{43}**     Aside from the unreliable informant tip and the agents' subjective belief that Defendant was engaging in a narcotics exchange, all the agents knew at the time they confronted Defendant was that Defendant had a history and reputation as a drug dealer and that they had received information from various other informants that Defendant was currently selling drugs. However, it is unclear what role Defendant's history and reputation played in the district court's findings, and on the record presented, we see this factor as giving rise to no more than a generalized suspicion of wrongdoing. The prior information received by the NEU agents, which placed Defendant "on [their] radar," also amounts to little more than rumor. The agents did not explore whether these prior informants had reliable bases of knowledge, and nothing was said about these informants' veracity. *Cordova,* 1989-NMSC-083, ¶¶ 6, 17.

**{44}**     We therefore hold that, in the totality of the circumstances, the agents did not have a reasonable suspicion of criminal activity when they confronted Defendant.

### B.     Point of Seizure

**{45}**     In light of our holding, we are called to address a question ruled on by the district court but not reached by the Court of Appeals: specifically, whether Defendant was seized when agents first confronted him at the gas station or at some other point during the encounter. The district court concluded that Defendant was not seized, and thus suppression was not warranted, because Defendant fled from the agents. The Court of Appeals assumed that Defendant was seized, but declined to expressly rule on the moment of seizure or resolve the parties' debate about preservation of Defendant's arguments under Article II, Section 10 regarding the point of seizure. *Granados*, A-1-CA-37417, mem. op. ¶¶ 7 n.2, 30 n.4. The State asks this Court to make a similar assumption and suggests that, if we reverse the lower courts' reasonable suspicion

analysis, then we should remand to the Court of Appeals to determine when Defendant was seized and whether he preserved his state constitutional claims.

**{46}** This Court will address the issue, rather than remand for further appellate consideration, as we reverse the lower courts' reasonable suspicion analysis and wish to provide clarity to the district court on remand. *Cf. State v. Ellenberger*, 1981-NMSC-056, ¶ 12, 96 N.M. 287, 629 P.2d 1216 (reaching an issue left unaddressed by the Court of Appeals due to this Court's alternate disposition of the case); *Ferrell v. Allstate Ins. Co.*, 2008-NMSC-042, ¶ 58, 144 N.M. 405, 188 P.3d 1156 (same). Determining the moment of seizure is "pivotal" to resolution of Defendant's direct appeal, because "[t]he point at which the seizure occurs . . . determines the point in time the police must have reasonable suspicion to conduct an investigatory stop." *State v. Harbison*, 2007-NMSC-016, ¶ 10, 141 N.M. 392, 156 P.3d 30. "Reasonable suspicion must exist at the inception of the seizure. The officer cannot rely on facts which arise as a result of the encounter." *Jason L.*, 2000-NMSC-018, ¶ 20 (citation omitted). The parties had fair opportunity to brief the merits of this issue in filings before this Court and the Court of Appeals. We therefore decide the moment of Defendant's seizure to promote judicial efficiency and meaningful appellate review.

### 1. Preservation of the seizure issue

**{47}** The State questions whether Defendant adequately preserved his arguments about seizure under the state constitution. During the evidentiary hearing on Defendant's motion to suppress, the State cited *State v. Maez*, 2009-NMCA-108, 147 N.M. 91, 217 P.3d 104, to argue that Defendant was not effectively seized because he fled from the agents. *Maez* was a decision made under Fourth Amendment jurisprudence, and did not discuss the standards relevant to determination of a seizure under Article II, Section 10. 2009-NMCA-108, ¶ 15. Defense counsel did not cite any contradictory authority on this point or otherwise inform the district court of the divergence in state constitutional precedent. The district court ultimately agreed with the State's analysis. Now on appeal, the State asserts that Defendant did not preserve his state constitutional arguments.

**{48}** The State seeks to impose too high a burden for preservation of this issue, as our established precedent has long construed Article II, Section 10 as providing greater protections than its federal counterpart. *See, e.g.*, *State v. Garcia,* 2009-NMSC-046, ¶ 31, 147 N.M. 134, 217 P.3d 1032 ("Article II, Section 10 is calibrated slightly differently than the Fourth Amendment. It is a foundation of both personal privacy and the integrity of the criminal justice system, as well as the ultimate regulator of police conduct."). In *State v. Gomez,* 1997-NMSC-006, ¶ 22, 122 N.M. 777, 932 P.2d 1, we explained that

> [i]f established precedent construes [a] provision [of the New Mexico Constitution] to provide more protection than its federal counterpart, the claim may be preserved by (1) asserting the constitutional principle that provides the protection sought under the New Mexico Constitution, and (2) showing the factual basis needed for the trial court to rule on the issue.

Where, as here, we have interpreted the relevant provision of our state constitution as providing greater protections, a party may preserve its state constitutional claim "in the

same manner as any other argument." *State v. Leyva*, 2011-NMSC-009, ¶ 42, 149 N.M. 435, 250 P.3d 861. "[O]nly where a state constitutional provision had never been interpreted to provide greater protection than its federal analog are parties required to alert the trial court and articulate reasons for departure." *Id.*

**{49}** Defendant argued in his motion to suppress that his rights had been violated under Article II, Section 10. He also developed the necessary factual record in an evidentiary hearing and at trial. *Cf. State v. Martinez*, 1980-NMSC-066, ¶ 16, 94 N.M. 436, 612 P.2d 228 (concluding that an appellate court may examine the whole record to ascertain the reasonableness of a search and seizure); *accord State v. Monafo*, 2016-NMCA-092, ¶ 10, 384 P.3d 134 ("Rather than being limited to the record made on a motion to suppress, appellate courts may review the entire record to determine whether there was sufficient evidence to support the trial court's denial of the motion to suppress." (internal quotation marks and citation omitted)). Defense counsel was not required to inform the district court of the divergent treatment of the issue for preservation purposes. "*Gomez* held that, although the defendant did not cite cases interpreting Article II, Section 10 more expansively, this did not operate to prejudice the State in any way because the district court is charged with knowing and correctly applying established New Mexico precedent interpreting the state constitution." *Leyva*, 2011-NMSC-009, ¶ 41 (internal quotation marks and citation omitted). Defendant preserved his state constitutional claims for our review. Rule 12-321 NMRA.

## 2. Defendant was seized at the gas station

**{50}** In *Jason L.*, 2000-NMSC-008, ¶ 19, we held that "[t]he determination of a seizure has two discrete parts." First "what were the circumstances surrounding the stop, including whether the officers used a show of authority[?]" *Id.* Second, "did the circumstances reach such a level of accosting and restraint that a reasonable person would have believed he or she was not free to leave?" *Id.* The first part of this inquiry presents a question of fact that we review for substantial evidence; the second part presents a question of law that we review de novo. *Id.* Although the district court ruled that Defendant was not seized, it made no explicit findings as to whether the agents made a show of authority when they approached Defendant at the gas station. The absence of explicit findings is a "regular occurrence when we review decisions on motions to suppress," and in these circumstances, "our practice has been to employ presumptions and as a general rule we will indulge in all reasonable presumptions in support of the district court's ruling." *Id.* ¶ 11 (text only) (citation omitted).

**{51}** However, we are not "bound by a trial court's ruling when predicated upon a mistake of law." *State v. Werner*, 1994-NMSC-025, ¶ 10, 117 N.M. 315, 871 P.2d 971 (internal quotation marks and citation omitted). The district court in the proceedings below was mistaken as to the appropriate standard applied to determination of a seizure under the New Mexico Constitution, as the court applied the federal constitutional standard. In *California v. Hodari D.*, 499 U.S. 621, 627-28 (1991), the United States Supreme Court held that a defendant is not seized within the meaning of the Fourth Amendment when the defendant does not yield to an officer's show of authority seeking to effectuate a stop. Thus, as correctly ruled on by the district court, Defendant was not seized for Fourth Amendment purposes because he did not submit to the agents before

abandoning the cocaine. "If [the d]efendant was not seized at the time [the defendant] discarded the contraband, then the evidence would be considered abandoned and Fourth Amendment protections would not apply." *Harbison*, 2007-NMSC-016, ¶ 10.

**{52}** However, this Court has explained that "*Hodari D.* does not comport with the distinctive New Mexico protection against unreasonable searches and seizures" under Article II, Section 10. *Garcia*, 2009-NMSC-046, ¶ 27. New Mexico courts follow the standard set by *United States v. Mendenhall*, 446 U.S. 544 (1980), and its progeny in evaluating claims of illegal seizure under our state constitution. Under *Mendenhall*, "a person has been 'seized' . . . only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he [or she] was not free to leave." *Id.* at 554. A "reasonable person would not feel free to leave when his or her freedom of movement is restrained, or when the facts show accosting and restraint." *Garcia*, 2009-NMSC-046, ¶ 37 (citations omitted). The district court did not consider whether the agents made a show of authority as relevant to our analysis under state constitutional law.

**{53}** In analyzing whether a reasonable person would feel free to leave, we examine the "(1) the conduct of the police, (2) the person of the individual citizen, and (3) the physical surroundings of the encounter." *Jason L.*, 2000-NMSC-018, ¶ 15 (internal quotation marks and citation omitted). An officer may "approach an individual, ask questions, and request identification without the encounter becoming a seizure." *State v. Walters*, 1997-NMCA-013, ¶ 18, 123 N.M. 88, 934 P.2d 282. "Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." *Id.* ¶ 12 (quoting *Terry*, 392 U.S. at 19 n.16). Factors indicating a seizure include "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *State v. Lopez*, 1989-NMCA-030, ¶ 3, 109 N.M. 169, 783 P.2d 479 (quoting *Mendenhall*, 446 U.S. at 554), *modified on other grounds by Jason L.*, 2000-NMSC-018, ¶ 19.

**{54}** The record shows that the agents attempted to prevent Defendant from leaving the gas station parking lot by pulling in front of his vehicle, but failed to do so because their vehicle skidded past Defendant's truck. After coming to a stop, the four agents exited their vehicle, displayed their official badges, invoked their authority as law enforcement officers by shouting into Defendant's open left front window, and ordered Defendant to exit his vehicle. At least one of the agents had his hand on his holstered weapon.

**{55}** On the facts presented, the language and conduct displayed by the agents in this case "would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter." *Walters*, 1997-NMCA-013, ¶ 12 (quoting *Florida v. Bostick*, 501 U.S. 429, 439 (1991)). Although the agents were not successful in their plan to block Defendant's vehicle, they approached Defendant in an accusatory and accosting manner and a reasonable person in Defendant's position would not have felt free to leave. *See, e.g., Lopez*, 1989-NMCA-030, ¶ 12 (finding that a defendant was seized when "[t]he police officers used their vehicle to block [the] defendant's vehicle, there were four police officers approaching

the pickup truck, and the officers were invoking their authority as police officers by displaying badges"); *State v. Boblick*, 2004-NMCA-078, ¶ 10, 135 N.M. 754, 93 P.3d 775 ("[W]e doubt that a reasonable person would feel free to leave after officers knocked on [the person's] car window, asked [the person] to exit the vehicle, and questioned [the person] about weapons."). The agents displayed a show of authority such that Defendant was seized at the gas station under Article II, Section 10 of the New Mexico Constitution. Defendant's refusal to submit to that show of authority does not alter this conclusion. *Garcia*, 2009-NMSC-046, ¶¶ 37, 41.

**{56}** As we have explained that the agents did not have a reasonable suspicion that Defendant was engaged or about to be engaged in an illegal narcotics exchange when they confronted Defendant, we hold the agents did not have a legitimate basis for the stop and Defendant's seizure violated Article II, Section 10.

## IV.  CONCLUSION

**{57}** Defendant was unreasonably seized under Article II, Section 10 of the New Mexico Constitution. The district court erred when it denied Defendant's motion to suppress. The district court's order denying suppression and the Court of Appeals' majority opinion affirming that order are reversed. We remand this matter to the district court with instructions to grant the motion to suppress and for further proceedings consistent with this opinion.

**{58}  IT IS SO ORDERED.**

**JULIE J. VARGAS, Justice**

**WE CONCUR:**

**C. SHANNON BACON, Chief Justice**

**MICHAEL E. VIGIL, Justice**

**DAVID K. THOMSON, Justice**