998 P.2d 1198 (2000)
128 N.M. 747
2000-NMSC-008
In the Matter of the COMMISSION'S INVESTIGATION OF the RATES FOR GAS SERVICE OF PNM'S GAS SERVICES, A Division of Public Service Company of New Mexico.
Attorney General of the State of New Mexico, Appellant,
v.
New Mexico Public Utility Commission, Appellee, and
New Mexico Industrial Energy Consumers, Intervener.
No. 25,439.
Supreme Court of New Mexico.
March 8, 2000.
Patricia A. Madrid, Attorney General, Jeff Taylor, Assistant Attorney General, Santa Fe, for Appellant.
Stacey J. Goodwin, Santa Fe, for Appellee.
*1199 Steven S. Michel, Karl O. Wyler, Santa Fe, for Intervener.

OPINION
MAES, Justice.
{1} This is a direct appeal of utility rate Case number 2762, involving PNM Gas Services (PNMGS) and the Attorney General acting on behalf of the citizens of the State of New Mexico. This Court has appellate jurisdiction by virtue of NMSA 1978, § 62-11-1 (1993). In this case, the New Mexico Attorney General, Public Regulatory Commission staff, and a number of other interested parties negotiated a stipulation[1] with PNMGS that among other things established a new rate plan for PNMGS's customers. The agreement reached by the parties included a $9.00 customer access fee and a standard distribution rate of $0.1044 per therm. Once the parties had agreed to the stipulation, they sought review by the Public Regulatory Commission (PRC or Commission) pursuant to NMSA 1978, § 62-6-4 (1993) ("The Commission shall have general and exclusive power and jurisdiction to regulate and supervise every public utility in respect to its rates and service regulations ..."). The hearing testimony before the PRC only concerned the stipulation and all parties involved urged the PRC's approval of the stipulation. Despite this, the PRC did not adopt the stipulation, but instead established a two-tiered rate plan that was not suggested in the proposed stipulation. The PRC's plan allowed residential customers to elect between a higher customer access fee of $14.56 combined with a lower distribution charge of $0.0393, or choose a lower customer access fee of $9.00 combined with a higher distribution charge of $0.1198 per therm.
{2} The Attorney General challenges the Commission's rate design, arguing that the Commission's alteration of the stipulation agreed to by the parties makes it void by its own terms, and that there is no evidence in the record to support the changes made by the Commission to the stipulation. She also contends that her due process rights were violated because the Commission consulted with PNMGS and Commission staff witnesses, after the hearing, in making calculations underlying the residential rate options, and because the Commission's changes to the stipulation were made without notice to the Attorney General or an opportunity to be heard. The PRC argues there was substantial evidence on which to base the rates and that the order makes sense in theory because, it is argued, the first rate option results in a more levelized bill over time and is more advantageous for higher use customers while the second option results in a bill that is more variable between seasons and is generally more advantageous for lower use customers. Because the record is devoid of substantial evidence supporting the order, we vacate the order and remand to the Commission. See NMSA 1978, § 62-11-5 (1982) ("The supreme court shall have no power to modify the action or order appealed from, but shall either affirm or annul and vacate the same."). We therefore need not reach the other arguments of the Attorney General.

Standard of Review
{3} The Attorney General has the burden of showing that the rates established in the Commission's final order in NMPUC case No. 2762 was unreasonable or unlawful. NMSA 1978, § 62-11-4 (1965). This court has determined that the appropriate inquiry in determining whether an order of the commission is unreasonable or unlawful is whether the commission's decision was arbitrary and capricious, unsupported by *1200 substantial evidence, or an abuse of the agency's discretion because it is outside the scope of the agency's authority, clear error, or violative of due process. See, e.g., Morningstar Water Users Ass'n v. New Mexico Pub. Util. Comm'n, 120 N.M. 579, 582, 904 P.2d 28, 31 (1995).
{4} In determining whether substantial evidence supports the fact finder's decision, the Supreme Court looks to the whole record. Otero County Elec. Coop., Inc. v. N.M. Pub. Serv. Comm'n, 108 N.M. 462, 464, 774 P.2d 1050, 1052 (1989). Under whole record review,
the court must be satisfied that the evidence demonstrates the reasonableness of the decision. No part of the evidence may be exclusively relied upon if it would be unreasonable to do so. The reviewing court needs to find evidence that is credible in light of the whole record and that is sufficient for a reasonable mind to accept as adequate to support the conclusion reached by the agency.
National Council on Compensation Ins. v. New Mexico State Corp. Comm'n, 107 N.M. 278, 282, 756 P.2d 558, 562 (1988).

Substantial Evidence
{5} The issue before the court is not whether the Attorney General presented substantial evidence to support the stipulation but rather whether the Commission's Final Order approving modification to the rate design stipulated by the parties is supported by substantial evidence in the record. "The question is not whether substantial evidence exists to support the opposite result, but rather whether such evidence supports the result reached." Las Cruces Prof'l Fire Fighters v. City of Las Cruces, 1997-NMCA-044, ¶ 12, 123 N.M. 329, 940 P.2d 177.
{6} Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Attorney Gen. v. New Mexico Pub. Serv. Comm'n, 101 N.M. 549, 553, 685 P.2d 957, 961 (1984). The Commission is not required to accept the opinion of experts as long as the ultimate decision is supported by substantial evidence. Id. at 554, 685 P.2d at 962. The Commission's decision is to be rejected only if conflicting evidence renders incredible the evidence in support of the decision. Otero County Elec. Coop., at 465-66, 774 P.2d at 1053-54.
{7} Of the five entities filing testimony on the proposed stipulation, including PUC staff, each specifically supported the $9.00 monthly service charge included in the stipulation. Despite this, the PRC has referenced several passages from the record and attempts to show that its decision implementing the tiered rate structure was supported by substantial evidence. We will analyze the evidence for substantive merit.
{8} The PRC states, "Taken as a whole, the evidence in the record supports the Commission's findings and conclusions that residential rates must take into consideration the need to provide stability and predictability in billing ...." Yet the PRC here refers us to the testimony of William J. Real, Senior Vice-President of PNMGS, where he stated,
I believe the Commission was concerned about price spikes in natural gas prices and viewed the $14.56 fee as a means of providing price stability to residential customers. However, as a result of the Company's changes to the method of developing the monthly [purchased gas adjustment cost or PGAC], and PNMGS' being granted authority to recover prudently incurred gas portfolio hedging costs, the risk of price spikes has been reduced. Furthermore, the continued promotion of budget billing has allowed several thousand customers to take advantage of this service to levelize their total gas bill. Because of these changed circumstances, we believe the Commission is now in a position, by adopting the Stipulation, to reduce the access fee for a significant number of customers ....
Thus, the record actually contradicts the assertions of the Commission because this statement clearly demonstrates PNMGS' willingness to reduce the access fee and adopt the proposed stipulation. While the Commission states in its brief, "Staff's witness also testified that the impact of the higher monthly charge [formerly] in effect *1201 was to stabilize all customer bills," it leaves out the remainder of the witness's statement:
Conditions have changed since the Commission ordered that recovery of revenues from residential customers should be weighted more heavily toward the access fee. The Commission made it clear in its Final Order in NMPUC Case No. 2662 ... that it was responding to the comments of customers in NMPUC Case No. 2752 who wanted more stability in their winter gas bills than occurred during the gas commodity cost-price spike of 1996-1997. Since that final order was issued, several changes have been made to alleviate the problems the customers addressed[.]
The witness then goes on to describe the various changes that have been made and concludes, "These efforts have changed the environment we are in today. In light of this, it is acceptable in the Stipulation to return to a more consumption-based rate design and that will simultaneously benefit the majority of PNMGS residential customers." Again, the full record shows the statement of the PRC to be something short of the whole story, and does not provide substantial evidence to support the PRC's cause.
{9} The PRC alleges that an orderly transition to a more competitive market is an issue of concern to PNMGS and that the PRC's modification of the stipulation will help bring about such transition. The record fails to support a conclusion that the PRC's modifications would aid in the development of a competitive market place. The specific testimony relied upon by the PRC in support of their allegation is contrary to, rather than in support of, the PRC modification to the stipulation. For example, a PNMGS witness stated, "The information that will be developed through the studies contemplated by the Stipulation will help all of the parties to provide previously unavailable cost and usage information to the Commission that will aid in the orderly transition to a more competitive market for gas." We believe the PRC has used a witness' discussion of the stipulation as the basis of an "issue" or as "evidence" in the record. This attempt is improper and must fail. Cf. Plains Elec. Generation and Transmission Coop. v. New Mexico Pub. Util. Comm'n, 1998-NMSC-038, ¶ 18, 126 N.M. 152, 967 P.2d 827 ("speculative assertion" does not constitute substantial evidence).
{10} The PRC also claimed that the testimony of intervener Enron Corporation supports a conclusion that the rate design adopted by the Commission will assist in the transition to greater competition in the gas industry. In fact, the testimony of Enron was that the greater the cost of gas included in the commodity or per unit charge, the better for Enron because then consumers would get better price signals based on their consumption, allowing a competitor to more easily make inroads. A high monthly service charge prevents that.
{11} The PRC asserts that their rate design was supported by substantial evidence because it addressed the needs of both low-volume customers as well as high-volume customers. As support for this proposition the PRC relies on the prefiled testimony of John M. Fernald, Director of Pricing and Regulatory Services for PNMGS, including an exhibit containing a residential bill comparison. The exhibit shows savings and losses to customers resulting from the change in the customer access fee from $14.56 to $9.00 per month based on annual therms consumed per residential customer; the breakeven point (where a customer with a particular volume is indifferent to the rate option presented); the total billing determinants and revenue requirements agreed upon for overall service charges, and the transmission and distribution percentage breakdowns; and, the percentage of residential customers by consumption. The PRC argues that this exhibit provided substantial evidence on which to base a dual rate design. We disagree. All of this data and the accompanying testimony was filed specifically in support of the stipulation. The raw data, while facially neutral as to a particular rate, would have to be taken totally out of testimonial context to affirmatively establish the rate set by the Commission. "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. N.L.R.B., 305 *1202 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938). And as we said in American Auto. Ass'n v. State Corporation Comm'n, 95 N.M. 227, 229, 620 P.2d 881, 883 (1980), the Commission here apparently
contends that this was mere opinion testimony that it was entitled to ignore and that it could set a rate inconsistent with the testimony. This argument is similar to one presented in Public Service Company v. New Mexico Public Service Commission, [92 N.M. 721, 722-23, 594 P.2d 1177, 1178-79 (1979)], in which we stated that assuming arguendo, that this is a correctstatement of law, it does not justify the setting of rates, inconsistent with expert testimony, which are not otherwise supported by substantial evidence.
{12} Numerous other jurisdictions also require at least an explanation on the part of the Commission as to why it went against the whole weight of the testimony, in order to facilitate judicial review. See Gailius v. Immigration and Naturalization Serv., 147 F.3d 34, 46-47 (1st Cir.1998) (citing, II Kenneth Culp Davis and Richard J. Pierce, Jr., Administrative Law Treatise § 11.2, at 189-90 (3d ed.1994)). See also National Labor Relations Bd. v. Cutting, Inc., 701 F.2d 659, 663 (7th Cir.1983); Hughes v. Saco Casting, 443 A.2d 1264, 1266 (R.I.1982); Turner v. Labor & Indus. Relations Comm'n, 793 S.W.2d. 191, 194 (Mo.App.1990). Such an explanation is not to be found in this case, and on the record, we are inclined to vacate the order because we cannot otherwise determine how the Commission could have reached its conclusion ignoring the competent, credible, and uncontradicted testimony. See Harken Southwest Corp. v. Board of Oil, Gas and Mining, 920 P.2d 1176, 1182 (Utah 1996).
{13} The PRC counters that in reviewing the Commission's decisions requiring expertise in highly technical areas such as utility rates and rate design, this Court should accord the Commission considerable deference, see Attorney General v. Public Serv. Comm'n, 111 N.M. at 642, 808 P.2d at 612, and that the Court should properly give special weight and credence to findings concerning technical matters within the expert field of an administrative agency. See McDaniel v. New Mexico Bd. of Med. Exam'rs, 86 N.M. 447, 450, 525 P.2d 374, 377 (1974). While this point is generally well-accepted, it is not well-taken in this case. Agency expertise is no substitute for evidence in the record. See 6 Jacob A. Stein, et al., Administrative Law § 51.02, at 51-96 (1999). The Supreme Court said in Baltimore & Ohio R. Co. v. Aberdeen & Rockfish R. Co., 393 U.S. 87, 91-92, 89 S.Ct. 280, 21 L.Ed.2d 219 (1968):
We agree with the District Court that there is no substantial evidence that territorial average costs are necessarily the same as the comparative costs incurred in handling North-South freight traffic. If we were to reverse the District Court, we would in effect be saying that the expertise of the Commission is so great that when it says that average territorial costs fairly represent the costs of North-South traffic, the controversy is at an end, even though the record does not reveal what the nature of that North-South traffic is. The requirement for administrative decisions based on substantial evidence and reasoned findingswhich alone make effective judicial review possiblewould become lost in the haze of so-called expertise. Administrative expertise would then be on its way to becoming "a monster which rules with no practical limits on its discretion."
(Citations omitted) Similarly, in this case, the conclusion of the PRC was wholly outside the evidence that was contained in the record, and the PRC's apparent reliance exclusively on its own expertise is impermissible. See Arthurs v. Board of Registration in Medicine, 383 Mass. 299, 418 N.E.2d 1236, 1244 (1981) ("The board may put its expertise to use in evaluating the complexities of technical evidence. However, the board may not use its expertise as a substitute for evidence in the record.").
{14} Additionally, we have conducted an exhaustive independent review of the record and the existence of substantial evidence supporting the Commission's decision was not disclosed.

*1203 Conclusion
{15} In conclusion, because the record does not contain substantial evidence on which the rates set by the Commission could be based, we vacate the order of the Commission and remand for further proceedings consistent with this opinion.
{16} IT IS SO ORDERED.
MINZNER, C.J., and FRANCHINI, J., concur.
BACA, J. (specially concurring).
SERNA, J. (specially concurring).
SERNA, Justice (specially concurring).
{17} I agree with the majority opinion that the Commission lacked substantial evidence to modify the stipulation in this case. However, I respectfully believe that this appeal raises a more fundamental question: whether the Commission has the authority to modify an unopposed stipulation over the objection of a party to the stipulation or whether the Commission, in such a circumstance, must accept or reject an unopposed stipulation in its entirety. Contrary to the majority opinion, which assumes that the Commission has authority to modify an unopposed stipulation without deciding the issue, I would resolve this appeal based on the threshold question of the Commission's authority in order to provide guidance to the parties, especially the Commission, and to prevent recurrence of this issue on remand. See generally Office of Consumer Advocate v. Utilities Bd., 452 N.W.2d 588, 594-95 (Iowa 1990) (stating that "[w]hile the [Utilities] Board is free to reject the stipulation," the Board has "no power to alter, amend, contradict, delete, or go beyond the terms of a stipulation"); Department of Pub. Advocate v. New Jersey Bd. of Pub. Utils., 206 N.J.Super. 523, 503 A.2d 331, 335-36 (App.Div.1985) (stating that the Board's power to modify its orders "does not, in our view, include the authority to modify the stipulation in contravention of the express terms of the agreement over the objection of one party"). As a result, I specially concur.
BACA, J., concur.
NOTES
[1] Among other parties represented were Enron Corporation, the Incorporated County of Los Alamos (COLA), the City of Albuquerque (COA), the United States Executive Agencies (USEA), and the New Mexico Industrial Energy Consumers (NMIEC). The Regents of the University of New Mexico (UNM), Colorado Interstate Gas Company, and the remaining interveners (B & R Energy Partners, Inc., New Mexico Vecinos United, Marathon Oil Co., Plains Electric Generation and Transmission Coop., Inc., Zia Natural Gas Co., Conoco, Inc., and pro se customers Nelson Gebay and Andres Valdez) were not signatories to, but did not oppose, the stipulation. The AG, NMIEC and USEA filed statements summarizing their pre-stipulation litigation positions. COLA, Commission staff, and UNM filed statements summarizing their direct testimony. Five signatories, the AG, PNMGS, Staff, COA, and Enron filed testimony in support of the stipulation.