The slip opinion is the first version of an opinion released by the Chief Clerk of the Supreme Court. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Chief Clerk for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

**Filing Date: July 6, 2023**

**PUBLIC SERVICE COMPANY OF NEW MEXICO,**

    Appellant,

v.                                                                                    NO. S-1-SC-39138

**NEW MEXICO PUBLIC REGULATION COMMISSION,**

    Appellee,

and

**SIERRA CLUB, NEW ENERGY ECONOMY, WESTERN RESOURCE ADVOCATES, and COALITION FOR CLEAN AFFORDABLE ENERGY,**

    Intervenors-Appellees.

**In the Matter of the Application of Public Service Company of New Mexico for Approval of the Abandonment of the Four Corners Power Plant and Issuance of a Securitized Financing Order, NMPRC Case No. 21-00017-UT**

**APPEAL FROM THE NEW MEXICO PUBLIC REGULATION COMMISSION**

PNM Resources, Inc.
Patrick V. Apodaca
Stacey J. Goodwin
Albuquerque, NM

Miller Stratvert, P.A.
Richard L. Alvidrez
Albuquerque, NM

Wilkinson Barker Knauer, LLP
Raymond L. Gifford
Debrea M. Terwilliger
Denver, CO

for Appellant


Judith E. Amer, Associate General Counsel
Santa Fe, NM

for Appellee


Jason Marks Law, LLC
Jason A. Marks
Albuquerque, NM

for Intervenor Sierra Club


New Energy Economy
Mariel Nanasi
Santa Fe, NM

Freedman Boyd Hollander & Goldberg, P.A.
John W. Boyd
Albuquerque, NM

for Intervenor New Energy Economy

Cydney Beadles
Santa Fe, NM

for Intervenor Western Resources Advocates


Cara Lynch Legal Services
Cara R. Lynch
Albuquerque, NM

for Intervenor Coalition for Clean Affordable Energy

## DECISION

**ZAMORA, Justice.**

## I.    INTRODUCTION

{1}    We address an appeal by the Public Service Company of New Mexico (PNM) from a final order of the New Mexico Public Regulation Commission (Commission) on PNM's Application for the Abandonment of the Four Corners Power Plant in San Juan County and Issuance of a Financing Order Pursuant to the Energy Transition Act, Case No. 21-00017-UT. In the current proceedings, PNM filed an application with the Commission requesting permission to abandon its partial ownership interest in the Four Corners Power Plant (Four Corners Plant). PNM also requested a financing order that would authorize PNM to issue energy transition bonds for the costs of abandoning the Four Corners Plant, as provided for by the Energy Transition Act (ETA), NMSA 1978, §§ 62-18-1 to -23 (2019). The Commission denied PNM's

application for abandonment and for a financing order. PNM appeals directly to this Court pursuant to NMSA 1978, Section 62-11-1 (1993), Section 62-18-8(B), and Rule 12-601 NMRA.

{2} PNM challenges three aspects of the final order: (1) the Commission's decision to deny the application for abandonment because PNM did not "identif[y] adequate potential new resources sufficient to provide reasonable and proper service to retail customers," § 62-18-4(D); (2) the Commission's alternative basis to deny the application for abandonment because PNM failed to provide exit scenario modeling for the Four Corners Plant as agreed upon in a prior case (Case No. 16-000276-UT); and (3) the Commission's decision to defer final resolution of the issues reserved in the prior case (Case No. 16-000276-UT) regarding the asserted imprudence of PNM's prior investments in the Four Corners Plant.

{3} As the party challenging the Commission's final order, PNM bears the burden of showing that the order was "arbitrary and capricious, not supported by substantial evidence, outside the scope of the agency's authority, or otherwise inconsistent with law." *Pub. Serv. Co. of N.M. v. N.M. Pub. Regul. Comm'n*, 2019-NMSC-012, ¶ 12, 444 P.3d 460 (internal quotation marks and citation omitted). On careful consideration of the briefs, authorities, and record, we conclude that PNM has not met its burden in challenging the final order. We deem it necessary to explain our

reasoning only on PNM's challenge to the Commission's interpretation and application of Section 62-18-4(D). We otherwise summarily affirm the final order.[1] *See* NMSA 1978, § 62-11-5 (1982) ("The supreme court shall have no power to modify the action or order appealed from, but shall either affirm or annul and vacate the same.").

{4} We exercise our discretion to dispose of this appeal by nonprecedential decision because the issues are answerable by statute and by the presence of substantial evidence. Rule 12-405(B)(2), (3) NMRA.

## II. BACKGROUND

{5} In January 2021, PNM filed an application with the Commission requesting permission to abandon its thirteen percent ownership interest in the Four Corners Plant, a coal-fired generating facility near Fruitland, New Mexico. PNM wished to sell its interest to the Navajo Transitional Energy Company, LLC (NTEC). PNM also requested a financing order authorizing the issuance of energy transition bonds to securitize the costs of abandoning the Four Corners Plant, as provided for by the

---

[1]By summarily affirming the final order, we do not reach PNM's challenges to the Commission's alternative basis for denying the abandonment application based on PNM's lack of exit scenario modeling and to the authority of the Commission to disallow PNM recovery for its prior investments in the Four Corners Plant. The Commission has decided to defer final action on the prudence issues reserved in Case No. 16-000276-UT and raised in the proceedings below. We affirm the Commission's decision to defer final resolution of these prudence issues.

ETA.

{6}     PNM elected to defer applying for approval of new resources to replace the generating capacity that it proposed to abandon at the Four Corners Plant. Consequently, according to Section 62-18-4(D) of the ETA, PNM's application for a financing order needed to identify "adequate potential new resources sufficient to provide reasonable and proper service to retail customers."

{7}     PNM attempted to meet its burden to identify "adequate potential new resources" through the testimony of Nicholas Phillips, PNM's director of Integrated Resource Planning. According to Phillips, PNM had compared the costs of continued ownership in the Four Corners Plant against the costs of the proposed abandonment and sale to NTEC. PNM's analysis showed that abandoning the Four Corners Plant and replacing the lost capacity with new resources would, in most cases, "result in cost savings for PNM's customers and a net public benefit."

{8}     Phillips further explained that, in analyzing the cost savings flowing from the proposed abandonment, PNM had not conducted a request for proposals (RFP) for new resources to replace the Four Corners Plant. Rather, "[f]or the purposes of this filing, PNM reasonably used the most recent available data to perform its abandonment analysis and assess the potential net public benefit for the proposed transaction." This "most recent available data" included publicly available

information from national energy organizations, nonpublic information from PNM's 2019 technology request for information, and bids that PNM had obtained in response to an RFP issued in 2017 for resources to replace the San Juan Generating Station (San Juan Station). According to Phillips, the San Juan Station's replacement resources were expected to be deployed by 2022, and the San Juan Station RFP data was "still recent enough to serve as a proxy for alternative resource options in evaluating the potential benefits of abandonment." The new resources identified in PNM's modeling were therefore "generic placeholders" for the types of resources generally available to replace the Four Corners Plant. Phillips further explained, "actual resources, including ownership structures, ultimately will be determined in the replacement resource filing following a competitive RFP evaluation process."

{9} Later, during evidentiary hearings on the application, Phillips testified that PNM had issued an RFP for new resources to replace capacity from the Four Corners Plant and was in the process of evaluating bids. However, Phillips did not identify any of the bids that were being considered by PNM. Phillips nevertheless emphasized that "the RFP response has been very robust," and that the bids PNM had received were "very much in line" with the bids PNM had received in response to prior RFPs. Phillips indicated that PNM was "planning on filing a replacement resource case with this RFP information used as the evaluation criteria for

7

replacement resources in the first quarter of 2022."

{10}    During the hearing, Phillips was asked about unexpected delays PNM had experienced in deploying new resources to replace capacity from the San Juan Station. Phillips stated that PNM did not expect similar delays in developing new resources for the Four Corners Plant. He explained that the Four Corners Plant replacement resources would be deployed in 2025, and the timing of PNM's Four Corners Plant abandonment application thus offered "a much longer lead time prior to when the replacement resources would need to come online." Phillips connected most of the delays with the replacement resources for the San Juan Station to supply chain issues arising from the COVID-19 pandemic, and he projected that the issues were "expected to be, you know, a short-term blip, and not a long-term effect." However, he also acknowledged that the delays experienced in at least one of the San Juan Station's replacement resource projects were not connected to the pandemic.

{11}    After conducting seven days of evidentiary hearings and considering post-hearing briefs, the hearing examiner assigned to the proceedings issued two recommended decisions. The first decision recommended approval of PNM's request to abandon the Four Corners Plant and to transfer its interest to NTEC. The second decision recommended that the Commission grant PNM's request for a

financing order to securitize the costs of abandoning the Four Corners Plant. With respect to the sufficiency of PNM's showing under Section 62-18-4(D), the hearing examiner recommended that the Commission find that PNM satisfactorily identified adequate potential new resources to permit deferral of applications for new resources.

{12}    The Commission disagreed with the recommendation of the hearing examiner and denied PNM's application to abandon the Four Corners Plant. Specifically, the Commission

> disagree[d] that proxy modeling alone, based on analysis of "generic placeholders" and "*PNM's view* of the most likely set of conditions in the future," is sufficient to meet ETA Section 62-18-4(D)'s requirements that the application both identify "adequate potential new resources" and that the potential new resources be "sufficient to provide reasonable and proper service to retail customers" without identifying the actual resources already under consideration, especially when PNM concedes it is in possession of such information.

According to the Commission, PNM's modeling was an insufficient "substitute for the review of the actual replacement resource portfolio" that the Commission was "able to perform in its prior ETA replacement resource and abandonment cases . . . especially when . . . the actual replacement resources are already under review by PNM as part of its ongoing RFP process." The Commission also raised concerns "about the supply chain issues that have recently affected PNM's efforts to bring the [San Juan Station] replacement resources online in a timely manner." The

9

Commission explained, "Review of the actual results of PNM's RFP and the resulting bids will provide the Commission up-to-date information on the effects such supply chain issues may have on pricing of actual proposed replacement resources." The Commission further noted, "PNM acknowledges[] ample time remains for the Commission to review PNM's actual proposed resources in determining whether the proposed abandonment should be granted especially since PNM indicates it will be ready to file its application in the first quarter of 2022." The Commission provided instructions for further proceedings should PNM refile an updated application with the required information.

**III.   DISCUSSION**

{13}   PNM argues that the Commission's decision is inconsistent with the plain language of Section 62-18-4(D). PNM also asserts that the Commission's decision is not supported by substantial evidence because PNM's modeling and Phillips' testimony satisfied Section 62-18-4(D). PNM suggests that the Commission's decision to reject PNM's evidence was arbitrary and capricious. As further discussed below, we disagree with PNM and conclude that the Commission reasonably and lawfully denied PNM's application for failure to meet the requirements of Section 62-18-4(D).

**A.   The Commission's Decision Is Consistent with Section 62-18-4(D)**

{14} We first address PNM's contention that the Commission's decision was inconsistent with Section 62-18-4(D). We review this issue de novo. *N.M. Indus. Energy Consumers v. N.M. Pub. Regul. Comm'n* (*NMIEC*), 2007-NMSC-053, ¶ 19, 142 N.M. 533, 168 P.3d 105.

{15} Section 62-18-4 governs the contents of PNM's application for a financing order in connection with its proposed abandonment of the Four Corners Plant. *See Citizens for Fair Rates & the Env't v. N.M. Pub. Regul. Comm'n* (*CFRE*), 2022-NMSC-010, ¶ 8, 503 P.3d 1138 ("A utility that wishes to obtain a financing order from the Commission must submit an application with several estimates, supporting documents, and other specified information as identified in Section 62-18-4."). As relevant to the issues herein addressed, Subsection (D) of that statute provides, "The qualifying utility or the commission may defer applications for needed approvals for new resources to a separate proceeding; provided that the application *identifies adequate potential new resources sufficient to provide reasonable and proper service to retail customers*." Section 62-18-4(D) (emphasis added).

{16} PNM argues that the Commission misconstrued Section 62-18-4(D) by requiring PNM to provide evidence of the "actual," rather than the "potential," new resources that PNM will use to replace the Four Corners Plant. PNM defines "potential" to mean "existing in possibility" or "capable of development into

11

actuality." *See Potential, Merriam Webster Online Dictionary*, https://www.merriam-webster.com/dictionary/potential (last viewed June 27, 2023). PNM asserts, "[b]ecause the plain meaning of the term 'potential' must indicate an action is 'capable of development into actuality,' the Commission cannot assume the Legislature meant to use the term 'actual' when it said 'potential.'" The Commission responds that it lawfully interpreted Section 62-18-4(D), considering its regulatory expertise and other relevant statutes and authority governing abandonment proceedings.

{17}    At the outset, we reject PNM's characterization of the reasoning and effect of the final order. On careful review, we ascertain that the Commission did not require PNM to identify the "actual resources" that PNM intends to use to replace the proposed abandoned capacity at the Four Corners Plant. Rather, the Commission required PNM to identify "the actual resources *already under consideration*." We understand this language to refer to the bids for new resources that PNM had obtained during the RFP directed at replacing the Four Corners Plant. We do not view the Commission's order as imposing a requirement that PNM identify the new resources that will actually replace the Four Corners Plant or as rejecting proxy modeling in all circumstances.

{18}     PNM has not shown that the Commission's decision to deny the application for failure to identify this information was inconsistent with the plain language of Section 62-18-4(D). "When construing statutes, our guiding principle is to determine and give effect to legislative intent." *Albuquerque Bernalillo Cnty. Water Util. Auth. v. N.M. Pub. Regul. Comm'n*, 2010-NMSC-013, ¶ 52, 148 N.M. 21, 229 P.3d 494 (internal quotation marks and citation omitted). "In discerning the Legislature's intent, we are aided by classic canons of statutory construction, and we look first to the plain language of the statute, giving the words their ordinary meaning, unless the Legislature indicates a different one was intended." *Id.* (text only)[2] (citation omitted). "[W]e accord some deference to the Commission's interpretation of its own governing statutes and will confer a heightened degree of deference to legal questions that implicate special agency expertise or the determination of fundamental policies within the scope of the agency's statutory function." *Pub. Serv. Co. of N.M.*, 2019-NMSC-012, ¶ 15 (internal quotation marks and citation omitted). However, "statutory construction itself is not a matter within the purview of the Commission's expertise," and this Court "will reverse the Commission's statutory

---

[2]The "text only" parenthetical as used in this decision indicates the omission—for enhanced readability—of all of the following nontextual marks that may be present in the source text: brackets, ellipses, and internal quotation marks.

interpretation if it is unreasonable or unlawful." *CFRE*, 2022-NMSC-010, ¶ 14 (internal quotation marks and citation omitted).

{19} The ETA does not define the phrase "identifies adequate potential new resources." Section 62-18-4(D); *see also* § 62-18-2 (Definitions). Although the terms used in this phrase are seemingly plain, we understand the phrase to demand resolution of policy issues and factual determinations falling within the Commission's statutory function and expertise. The Commission has been granted express authority to ascertain whether PNM's application for a financing order complies with the requirements of Section 62-18-4(D). Section 62-18-5(A), (E). The Commission likewise has been granted a "broad legislative mandate" to determine whether to grant or deny PNM's application for its abandonment of the Four Corners Plant. *Pub. Serv. Co. of N.M. v. N.M. Pub. Serv. Comm'n*, 1991-NMSC-083, ¶¶ 11-12, 112 N.M. 379, 815 P.2d 1169; NMSA 1978, § 62-9-5 (2005) ("No utility shall abandon *all or any portion* of its facilities subject to the jurisdiction of the commission . . . without . . . approval of the commission."); § 62-18-4(A).

{20} With those principles in mind, we conclude that the Commission's interpretation of Section 62-18-4(D) in this case was not contrary to the plain language of the ETA. Section 62-18-4(D) required PNM to specify resources that were "existing in possibility" or "capable of development into actuality," *Potential*,

14

*Merriam Webster*, *supra*, so that the Commission could determine whether "the application identifie[d] adequate potential new resources sufficient to provide reasonable and proper service to retail customers." Section 62-18-4(D). *See also Identify*, *Black's Law Dictionary* (11th ed. 2019) (defining "identify" in this context as "[t]o specify"). The Commission is in the best position to determine whether the generic resources used in PNM's modeling met that standard. This is especially true in regard to determining whether the replacement resources were "sufficient to provide reasonable and proper service to retail customers," a factual determination specifically implicating the Commission's expertise. *See* § 62-18-4(D). Thus, the Commission's order is not contrary to the plain language of Section 62-18-4(D), especially when we give effect to the whole phrase, "identifies adequate potential new resources." *See Baker v. Hedstrom*, 2013-NMSC-043, ¶ 24, 309 P.3d 1047 ("[T]he [L]egislature is presumed not to have used any surplus words in a statute; each word is to be given meaning." (second alteration in original) (internal quotation marks and citation omitted)).

{21} PNM has not persuaded us that the Commission's interpretation of Section 62-18-4(D) was unreasonable or unlawful. Thus, we hold that the Commission's decision was consistent with Section 62-18-4(D).

**B.      The Commission's Decision Was Based on Substantial Evidence**

{22}      PNM next asserts that the final order was not supported by substantial evidence because PNM identified new resources that were sufficient to meet the requirements of Section 62-18-4(D). The Commission counters that the generic or proxy resources that PNM presented were insufficient to meet PNM's Section 62-18-4(D) burden.

{23}      We review this issue by looking "to the whole record to determine whether substantial evidence supports the Commission's decision." *Pub. Serv. Co. of N.M.*, 2019-NMSC-012, ¶ 14 (internal quotation marks and citation omitted). For a decision to be supported by substantial evidence, "[t]he reviewing court needs to find evidence that is credible in light of the whole record and that is sufficient for a reasonable mind to accept as adequate to support the conclusion reached by the agency." *NMIEC*, 2007-NMSC-053, ¶ 24 (internal quotation marks and citation omitted). "We view the evidence in the light most favorable to the Commission's decision and draw every inference in support of the Commission's decision." *Id.* (citations omitted).

{24}      PNM asserts that the Commission's decision was not based on substantial evidence because PNM's evidence was uncontradicted. We similarly acknowledge that no additional evidence or testimony was introduced to contradict PNM's

evidence. However, "[t]he Commission is not bound by the opinions of experts so long as the Commission's ultimate decision is supported by substantial evidence." *Att'y Gen. of N.M. v. N.M. Pub. Serv. Comm'n*, 1984-NMSC-081, ¶ 15, 101 N.M. 549, 685 P.2d 957. The Commission's reasons for departing from uncontradicted testimony must be supported by the record. *In re Commission's Investigation of Rates for Gas Serv. of PNM's Gas Servs.*, 2000-NMSC-008, ¶¶ 11-12, 128 N.M. 747, 998 P.2d 1198.

{25} The record here supports the Commission's decision to depart from PNM's evidence. Phillips himself testified about the limitations of PNM's modeling, explaining that PNM relied on prior bids for new resources for the San Juan Station as a proxy for new resources to replace capacity from the Four Corners Plant. The resources identified in PNM's application thus served only as "generic placeholders." Phillips further admitted that PNM had encountered unexpected delays in deploying resources to replace the capacity being abandoned at the San Juan Station. At the time of the evidentiary hearings on the application, Phillips testified that PNM was in the process of evaluating bids from an RFP for new resources to replace the proposed abandoned capacity at the Four Corners Plant. But PNM did not identify any of the new resources being evaluated. In view of these

circumstances, the Commission found that it could not satisfactorily review PNM's application for abandonment and request for a financing order.

{26} Given the delays experienced in deploying the San Juan Station replacement resources and the nature of the generic information provided, we agree that a reasonable mind could conclude that Phillips' testimony and PNM's modeling, on its own, was inadequate to sustain PNM's burden under Section 62-18-4(D). *Cf. Pub. Serv. Co. of N.M.*, 1991-NMSC-083, ¶ 19 (affirming a Commission order which "rejected as inadequate PNM's proffered alternative energy sources" in a proceeding to review PNM's application for abandonment of San Juan Unit 4). We accord some deference to the Commission's expertise with respect to the weight to be accorded to PNM's evidence on this issue. *See Morningstar Water Users Ass'n v. N.M. Pub. Util. Comm'n*, 1995-NMSC-062, ¶ 12, 120 N.M. 579, 904 P.2d 28 ("When the matter before the court is a question of fact, the court will generally defer to the decision of the agency, especially if the factual issues concern matters in which the agency has specialized expertise."). Thus, viewing the whole record in the light most favorable to the Commission's decision, we hold that the Commission's findings as to the sufficiency of PNM's application under Section 62-18-4(D) are supported by substantial evidence.

**C. The Commission's Decision Was Not Arbitrary and Capricious**

{27} Finally, we consider whether the Commission's decision to deny PNM's application for failure to satisfy Section 62-18-4(D) was arbitrary and capricious. "A ruling by an administrative agency is arbitrary and capricious if it is unreasonable or without a rational basis, when viewed in the light of the whole record." *Pub. Serv. Co. of N.M.*, 2019-NMSC-012, ¶ 16 (internal quotation marks and citation omitted).

{28} PNM asserts that the final order was arbitrary and capricious because the Commission had previously accepted proxy modeling as reliable evidence in other proceedings. The Commission "is not free to change its position without good cause and prior notice to the affected parties, if the regulatory change is to be imposed retroactively." *Hobbs Gas Co. v. N.M. Pub. Serv. Comm'n*, 1993-NMSC-032, ¶ 12, 115 N.M. 678, 858 P.2d 54. However, we do not view the final order as changing the Commission's position with respect to the reliability of proxy modeling evidence. Rather, we understand the final order as finding that the modeling provided in this proceeding was insufficient, on its own, to meet PNM's burden under Section 62-18-4(D) in view of the circumstances presented.

{29} Nevertheless, to the extent that the Commission's decision to require more than modeling can be understood as a departure from prior practice, we conclude that PNM had sufficient notice. Several intervening parties challenged the

sufficiency of PNM's evidence early in the proceedings during briefing on a motion to dismiss. In declining to dismiss on this basis, the hearing examiner explained, "[A]t this nascent stage of the proceeding PNM's [a]pplication and supporting testimony appear to sufficiently address the requirement under Section 62-18-4(D) that adequate potential new resources be identified." But the hearing examiner also emphasized, "[f]or purposes of ultimate proof, however, whether this requirement has been satisfied awaits a ruling based on the evidence adduced at hearing." Additionally, Commission staff expressed concerns in post-hearing briefing about PNM's failure to satisfactorily identify replacement resources for the Four Corners Plant. Thus, PNM was aware of the questions raised about the sufficiency of its modeling evidence.

{30}    PNM also asserts that the Commission's reasoning is internally inconsistent because the final order "concludes that 'proxy modeling alone' is not sufficient to meet Section 62-18-4(D), while also acknowledging that PNM had already conducted an RFP and had 'actual resources already under consideration.'" We do not see the Commission's reasoning as internally inconsistent. The Commission concluded that the application was deficient because PNM had failed to provide the Commission with necessary information. It was not inconsistent for the Commission to also acknowledge that PNM possessed the necessary information and that enough

20

time remained to reconsider an updated application if PNM were to provide the information. We therefore hold that the final order did not arbitrarily and capriciously deny PNM's application under Section 62-18-4(D).

**IV.    CONCLUSION**

{31}    We conclude that the Commission reasonably and lawfully denied PNM's application for failure to satisfy Section 62-18-4(D). As we otherwise find no error, we affirm the final order and remand for further proceedings consistent with our decision.

{32}    **IT IS SO ORDERED.**

_____
**BRIANA H. ZAMORA, Justice**

**WE CONCUR:**

_____
**C. SHANNON BACON, Chief Justice**

_____
**MICHAEL E. VIGIL, Justice**

_____
**DAVID K. THOMSON, Justice**

21

_____

**JULIE J. VARGAS, Justice**